******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# AURORA LOAN SERVICES, LLC *v.* KAREN CONDRON ET AL.
## (AC 38934)

Alvord, Elgo and Sullivan, Js.

*Syllabus*

The plaintiff loan service company sought to foreclose a mortgage on certain real property owned by the defendants K and J. The plaintiff, as the servicer of the loan at the time, had sent a letter to K and J by certified mail, return receipt requested, notifying them that the loan was in default and advising them of the amount required to cure the default and to reinstate the loan as of that date. Pursuant to the mortgage deed, the plaintiff was required to give notice of default to K and J prior to commencing the present foreclosure action, and the written notice was deemed to have been given to the borrower when mailed by first class mail or when actually delivered to the notice address of K and J if sent by other means. The plaintiff also provided notice to K and J by certified mail of their rights under the statute (§ 8-265ee) that requires a mortgagee to provide specific notice to the mortgagor before it can commence a foreclosure of a qualifying mortgage under the Emergency Mortgage Assistance Program. K and J failed to cure the default and the plaintiff elected to accelerate the balance due on the note, declare the note due in full, and foreclose the mortgage deed securing the note. Thereafter, the plaintiff assigned the mortgage to N Co. by virtue of a corporate assignment of mortgage and N Co. was substituted as the plaintiff. Subsequently, the trial court rendered judgment of strict foreclosure, from which K and J appealed to this court. On appeal, they claimed that the trial court improperly rendered judgment of strict foreclosure because N Co. failed to satisfy a contractual condition precedent to foreclosure, namely, compliance with the requirement of notification by mail specified in the mortgage deed, N Co. failed to satisfy a statutory condition precedent when it did not comply with the notice requirement set forth in § 8-265ee, and N Co. lacked the authority to foreclose. *Held*:

1. K and J could not prevail on their claim that N Co. failed to demonstrate that it had standing to foreclose, which was based on their claim that N Co. did not own the note and that the note's owner, W Co., did not authorize N Co. to foreclose in its own name, as N Co. had standing to foreclose in its own name because it was the holder of the note and it provided sufficient evidence of its authority to foreclose: N Co. presented the original note to the trial court at the foreclosure trial, and even though N Co. did not own the note, it demonstrated that it had the authority to foreclose on the mortgage deed securing the note because N Co. presented evidence that it, as the successor in interest to the plaintiff, was the master servicer as defined by a certain trust agreement, pursuant to which N Co., as the master servicer, had the authority to, inter alia, effectuate foreclosure on the property; moreover, N Co. presented evidence that W Co., as trustee, unequivocally manifested its intention to authorize N Co. to exercise its rights to enforce the debt when it provided a limited power of attorney to N Co., which included the power to execute and deliver on behalf of W Co. all documents and instruments necessary to conduct any foreclosure.

2. Although the trial court improperly admitted the hearsay testimony of A, a litigation resolution analyst for N Co., regarding the contents of certain business records that were not in evidence to prove that the notice of default letter had been sent, any error was harmless, as N Co. proved by a preponderance of the evidence that the notice of default letter was sent to K and J by certified mail; A's testimony concerning the business records was merely cumulative of properly admitted evidence demonstrating that the default notice was sent by certified mail, as the default letter was admitted into evidence without objection and A testified, on the basis of his review of the file and his familiarity with industry practice, concerning the appearance of the default letter and certain markings on it, which indicated that it had been sent by certified mail.

3. The trial court incorrectly concluded that N Co. satisfied its burden of

proof under the mortgage deed to establish that the plaintiff complied with the notification requirements, pursuant to which the plaintiff was required to provide notice of a default to a mortgagee as a condition precedent to the commencement of a foreclosure proceeding; because the delivery of first class mail by certified mail imposes additional restrictions that often make actual delivery less likely, the plaintiff's notice by certified mail was not notice by first class mail, which was afforded a presumption of receipt, and was properly construed as other means of mail service, for which proof of actual delivery was required under the mortgage deed, and because N Co. failed to submit a return receipt or any other evidence into the record to prove that the notice of default was actually delivered to K and J by certified mail, it failed to satisfy its burden of proof to establish that the plaintiff complied with the notification requirements of the mortgage deed.

4. The trial court erred by applying the doctrine of substantial compliance and concluding that the plaintiff had substantially complied with the notice requirements of the mortgage deed when it sent the default letter to K and J by certified mail; although the doctrine of substantial compliance applies in the context of reviewing the substance of a default notice, the doctrine did not apply where, as here, there was a contractual provision requiring proof of actual delivery for a notice of default sent by certified mail, return receipt requested, and there was no evidence that K and J actually received the notice of default.

5. K and J could not prevail on their claim that a statutory condition precedent to the action failed because N Co. did not introduce into evidence the certified mail receipt confirming that the notice required by § 8-265ee (a) was actually delivered by certified mail; the plain language of § 8-265ee (a) required that the plaintiff give notice to K and J by registered or certified mail but did not require a return receipt, and the plaintiff had satisfied that statutory condition precedent to foreclosure because the record supported the trial court's finding that the § 8-265ee (a) notice was sent by certified mail.

Argued October 11, 2017—officially released April 24, 2018

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant National City Bank was defaulted for failure to plead; thereafter, the court, *Mintz, J.*, granted the plaintiff's motion to substitute Nationstar Mortgage, LLC, as the plaintiff; subsequently, the court, *Mintz, J.*, denied the substitute plaintiff's motion for summary judgment; thereafter, the defendant People's United Bank et al. were defaulted for failure to appear; subsequently, the matter was tried to the court, *Heller, J.*; judgment of strict foreclosure, from which the named defendant et al. appealed to this court. *Reversed; judgment directed.*

*Christopher G. Brown*, for the appellants (named defendant et al.).

*Christopher S. Groleau*, with whom, on the brief, was *Jonathan Adamec*, for the appellee (substitute plaintiff).

*Opinion*

ELGO, J. The defendants, Karen Condron and James L. Condron,[1] appeal from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff Nationstar Mortgage, LLC.[2] On appeal, the defendants claim that the court improperly rendered judgment of strict foreclosure because (1) the plaintiff failed to satisfy a contractual condition precedent to foreclosure, namely, compliance with the requirement of notification by mail specified in the mortgage deed;[3] (2) the plaintiff failed to satisfy a statutory condition precedent, as required by the Emergency Mortgage Assistance Program (mortgage program) pursuant to the provisions of General Statutes § 8-265ee (a); and (3) the plaintiff lacked the authority to foreclose. The judgment is reversed and the case is remanded with direction to dismiss the action.

The following facts and procedural history are relevant to the present appeal. On February 16, 2007, the defendants executed and delivered an adjustable rate promissory note (note) payable to the order of Lehman Brothers Bank, FSB (bank), in the original principal amount of $980,000. The loan was secured by a mortgage (mortgage deed) on the property. The mortgage deed was executed and delivered on February 16, 2007, to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for the bank. The bank specially endorsed the note to Lehman Brothers Holdings, Inc., which endorsed the note in blank.

On March 1, 2007, Aurora Loan and Lehman Brothers Holdings, Inc., entered into a written servicing agreement (servicing agreement). Structured Asset Securities Corporation, Wells Fargo Bank, N.A. (Wells Fargo), and Aurora Loan entered into a written trust agreement, dated March 1, 2007 (trust agreement). Under the trust agreement, the defendants' note and mortgage deed became part of the trust. Wells Fargo, as trustee, is the owner of the debt under the trust agreement. Aurora Loan, or any successor in interest,[4] is identified in the trust agreement as the master servicer and as a servicer.[5] MERS, as nominee for the bank, assigned the mortgage deed to Aurora Loan by virtue of a corporate assignment of the mortgage deed.

The defendants have been in default on the note and mortgage deed since at least May 1, 2009. On June 19, 2009, Aurora Loan, as the servicer of the loan at the time, sent a letter to the defendants, *by certified mail, return receipt requested*, notifying them that the loan was in default and advising them of the amount required to cure the default and reinstate the loan as of that date. On the same date, Aurora Loan also provided notice to the defendants by certified mail of their rights under the mortgage program, pursuant to the provisions of General Statutes §§ 8-265cc through 8-265kk. The

defendants failed to cure the default and Aurora Loan elected to accelerate the balance due on the note, declare the note due in full, and foreclose the mortgage deed securing the note. Aurora Loan commenced the present foreclosure action against the defendants on November 19, 2009. Aurora Loan assigned the mortgage to the plaintiff by virtue of a corporate assignment of mortgage on June 29, 2012. On August 22, 2012, Wells Fargo, as trustee, provided a limited power of attorney to the plaintiff, as assignee of Aurora Loan. The plaintiff was in possession of the note and presented it to the court and to the defendants' counsel for inspection at the foreclosure trial. On April 8, 2013, Aurora Loan moved to substitute Nationstar Mortgage, LLC, as the plaintiff in the present action, and the court granted the motion to substitute on May 1, 2013.

The action was tried to the court on August 25, 2015. At trial, the defendants claimed that they did not receive either the default notice or the mortgage program notice from Aurora Loan. No evidence was offered by either party to show that the mortgage program notice or the default notice had been returned to Aurora Loan by the United States Postal Service (USPS) with an endorsement showing failure of delivery. In addition, no evidence was offered of a return receipt confirming actual delivery. In its memorandum of decision, the court concluded that (1) the plaintiff had standing to prosecute the present foreclosure action; (2) the plaintiff had proven compliance with the notice provisions of the mortgage deed by a preponderance of the evidence; (3) the plaintiff had proven by a preponderance of the evidence that the mortgage program notice was sent to the defendants by certified mail on June 19, 2009; and (4) the plaintiff was entitled to a judgment of strict foreclosure against the defendants. On appeal, the defendants challenge the propriety of that decision. Additional facts will be provided as necessary.

I

We first address the issue of standing because an absence of subject matter jurisdiction would deprive this court of the opportunity to review any other matters raised in the present appeal. See *Wells Fargo Bank, N.A.* v. *Henderson*, 175 Conn. App. 474, 481, 167 A.3d 1065 (2017). The defendants claim that the plaintiff failed to demonstrate that it had standing to foreclose because the plaintiff does not own the note and the note's owner, Wells Fargo, as trustee, did not authorize the plaintiff to foreclose in its own name. The plaintiff maintains that it has standing to foreclose in its own name because it was the holder of the note and it provided sufficient evidence of its authority to foreclose. We agree with the plaintiff.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or

representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of this question of law is plenary." (Citations omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis added; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Henderson*, supra, 175 Conn. App. 483.

"[I]n defending against an action to enforce a note, a debtor may be able to produce evidence demonstrating that the plaintiff, who might otherwise appear to be entitled to enforce the debt nevertheless lacks standing, perhaps because ownership of the debt has passed to another party." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 325. "[I]t is the foreclosing party's burden, when the issue of standing is raised, to demonstrate by way of proper documentation that it has the right to enforce the note. It may, for example, produce documents showing a valid transfer of the right to enforce the note between the original holder and the foreclosing party." *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 150–51, 125 A.3d 262 (2015).

In the present case, Aurora Loan, the original plaintiff, was the holder of the note when it commenced the present action in November, 2009. Aurora Loan assigned its rights, title, and interest in the mortgage deed to the plaintiff by a corporate assignment of the mortgage on June 29, 2012. As a result, the court granted

Aurora Loan's motion to substitute Nationstar Mortgage, LLC, as the plaintiff in the present action, and the plaintiff is now the holder of the note endorsed in blank. The plaintiff presented the note to the court at the foreclosure trial. According to the trust agreement, however, Wells Fargo is the owner of the debt.

The issue is whether the plaintiff, despite not owning the note, demonstrated that it had the authority to foreclose on the mortgage deed securing the note. See *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 134, 117 A.3d 500, cert. denied, 317 Conn. 915, 117 A.3d 854 (2015). "[A] plaintiff, in establishing the loan servicer's authority to enforce the instrument, must provide sufficient evidence of such authority to demonstrate that the principals unequivocally manifested their intention to authorize [the loan servicer] to exercise [those] rights . . . ." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 328 n.19.

The defendants argue that the plaintiff failed to present evidence of an unequivocal manifestation of intent for Wells Fargo to authorize the plaintiff to foreclose on the mortgage deed.[6] The plaintiff provided evidence of the trust agreement, the servicing agreement, the limited power of attorney, and the testimony of Keith Kovalic, a litigation resolution analyst for the plaintiff. On the basis of that evidence, the trial court held that the plaintiff satisfied its burden of proving that it had standing to foreclose the mortgage deed.

Our review of that evidence supports the trial court's findings and conclusion on the issue of standing. The plaintiff presented to the court the trust agreement and Kovalic testified as to the contents of the trust agreement, which pertained to Wells Fargo's authorization for the plaintiff to enforce the debt.[7] The trust agreement defines "Master Servicers" as "[Aurora Loan], or any successor in interest, or if any successor master servicer shall be appointed as herein provided, then such successor master servicer." The plaintiff is, accordingly, a "Master Servicer" as defined by the trust agreement because the parties have stipulated to the fact that the plaintiff is a successor in interest to Aurora Loan.

Section 9.04 (a) of the trust agreement provides in pertinent part that a Master Servicer "shall have full power and authority (to the extent provided in the applicable Servicing Agreement) to do any and all things that it may deem necessary or desirable in connection with the servicing and administration of the Mortgage Loans, including but not limited to the power and authority . . . to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan . . . ."[8]

Moreover, Wells Fargo, as trustee, provided a limited

power of attorney to the plaintiff. The limited power of attorney provided that the plaintiff has "full authority and power to execute and deliver on behalf of the Trustee . . . all documents and instruments necessary to conduct any (a) foreclosure, or (b) the taking of any deed in lieu of foreclosure, or (c) any judicial or non-judicial foreclosure or termination, cancellation, or rescission of any such foreclosure, or (d) any similar procedure (collectively, as applicable, a 'Foreclosure') . . . ."

The record supports the trial court's finding that Wells Fargo unequivocally manifested its intention to authorize the plaintiff to exercise its rights to enforce the debt. Accordingly, we conclude that the plaintiff had standing to maintain the foreclosure action.

II

The defendants next claim that the court improperly determined that Aurora Loan satisfied a contractual condition precedent to the commencement of the present foreclosure action regarding notification by mail because (1) Kovalic's testimony about certain documents not in evidence was inadmissible hearsay and, as a result, there is no proof of mailing; (2) the notice was not sent by first class mail and, therefore, requires proof of actual delivery; and (3) there was no substantial compliance with the notice provision because there was no notice at all. We address each claim in turn.

A

The defendants claim that Kovalic's testimony regarding the contents of business records that were not in evidence is inadmissible hearsay. Kovalic testified that he reviewed notes in the file, which indicated that the default letter was sent.[9] The notes themselves were not introduced into evidence. As such, the defendants' counsel objected to the testimony as inadmissible hearsay, but was overruled. The defendants now challenge that evidentiary ruling.

"The standard under which we review evidentiary claims depends on the specific nature of the claim presented. . . .  To the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which

admission is being sought." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 289 Conn. 598, 617–18, 960 A.2d 993 (2008).

"An out-of-court statement offered to prove the truth of the matter asserted in the statement is hearsay. . . . Unless subject to an exception, hearsay is inadmissible." (Citation omitted.) *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 708, 638 A.2d 44 (1994). In his testimony, Kovalic referenced the content of notes which were part of computer records that were not offered into evidence.[10] Those notes, which were offered to prove that the default letter was sent, are out-of-court statements offered to prove the truth of the matter asserted. See *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 488–89, 586 A.2d 1157 (1991); see also *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 757, 680 A.2d 301 (1996). As such, they are inadmissible hearsay in the absence of any exception.

That determination, however, does not end our analysis. "It is well established that before a party is entitled to a new trial because of an improper evidentiary ruling, that party has the burden of establishing that the improper ruling was harmful. . . . When determining that issue in a civil case, the applicable standard is whether the improper ruling would likely affect the result. . . . If the improperly admitted testimony is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Thames Valley Council for Community Action, Inc.*, 69 Conn. App. 850, 866–67, 797 A.2d 1146, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002).

We look to the record to determine whether Kovalic's testimony regarding the notation in the file likely would have affected the outcome or whether it was merely cumulative of properly admitted evidence that notice was sent by certified mail. See *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). In this regard, we note that the defendants do not contest the admissibility of the default letter or Kovalic's testimony about the notations on the letter itself.

During trial, Kovalic reviewed the default letter and testified that the default letter itself revealed that it was sent by certified mail. Based on his review of the file and his familiarity with industry practice, Kovalic testified as to the appearance of the default letter and noted significant markings on the letter that indicated that it was sent by certified mail. As he stated: "[Y]ou've got, obviously, this was a letter that was generated to be sent and you know it has these dotted lines that would have been trifold, similar to say a W-2 tax form, says it was sent by certified mail, it has a tracking number, that tracking number is also on the flip side on the return receipt, same tracking number, and on both the

return letter to [Aurora Loan] and to [the defendants]. So, I mean, using those three pieces of information right there, in addition to everything I've reviewed on my system, which is volumes of paperwork, thousands and thousands of pages of internal notes from [the plaintiff], previous notes from Aurora [Loan], all that, looking at this letter I can say that it was sent by certified mail, and it's all right here, this is exactly what was sent, what was generated, folded along the lines, and sent."[11]

In light of (1) the letter and (2) Kovalic's testimony regarding notations on the letter and industry practice, we conclude that Kovalic's testimony regarding the notations in the file was merely cumulative. We are, therefore, satisfied that the court's improper admission of Kovalic's testimony regarding the notations in the file was harmless and the plaintiff has proved by a preponderance of the evidence that the notice of default letter was sent to the defendants.

B

We next consider whether the court properly determined that Aurora Loan complied with the requirement of notification by mail contained in the mortgage instruments. In its memorandum of decision, the court concluded that certified mail that is sent with a return receipt requested qualifies as "first class mail" for which notice is "deemed to have been given to Borrower when mailed," pursuant to § 15 of the mortgage deed. The defendants now challenge the propriety of that determination.

We begin by noting that the mortgage deed contains a condition precedent to a foreclosure proceeding. Section 22 of the mortgage deed provides in relevant part: "Lender *shall* give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. . . ." (Emphasis added.) The intent of such notice of default provisions is to inform "mortgagors of their rights so that they may act to protect them." *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 710, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

"A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." (Internal quotation marks omitted.) Id., 707. "The use of shall in the note creates a condition precedent that must be satisfied prior to foreclosure. . . . The condition precedent under the note is the notice

of the default . . . ." (Internal quotation marks omitted.) *Bank of America, FSB* v. *Hanlon*, 65 Conn. App. 577, 582, 783 A.2d 88 (2001); see also *Fidelity Bank* v. *Krenisky*, supra, 710 ("when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure" [internal quotation marks omitted]). Pursuant to § 22 of the mortgage deed, Aurora Loan was required to give notice of default to the defendants prior to commencing the present foreclosure action. As a result, we must determine whether the court properly determined that Aurora Loan complied with the notice requirement.[12]

To answer that question, we must construe § 15 of the mortgage deed, which governs the method of delivery of the default notice. Section 15 provides that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument *shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means*." (Emphasis added.) Accordingly, a default notice sent by first class mail is entitled to a presumption of receipt, while notices sent by other means are not entitled to such a presumption. Rather, proof of actual delivery is required by the mortgage deed when the notice is sent by other means.

We already have concluded that the trial court properly determined that the notice of default letter was sent to the defendants by certified mail. See part II A of this opinion. Throughout this litigation, the defendants have argued that they "did not receive either the default notice, required by the mortgage, or the [mortgage program] notice." At trial, the plaintiff did not present any evidence of actual delivery of the default notice, nor was the return receipt that Aurora Loan requested furnished to the court. The question, then, is whether sending the default notice letter by certified mail without proof of the requested return receipt carries the presumption of receipt afforded to first class mail or whether certified mail is notice "by other means" requiring proof of actual delivery.

We begin with the relevant legal authority and standard of review. "It is well established that [n]otices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such. . . .

"In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended. . . .

"In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 706–707.

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Perez* v. *Carlevaro*, 158 Conn. App. 716, 723, 120 A.3d 1265 (2015). "Ordinarily, such ambiguity requires the use of extrinsic evidence by a trial court to determine the intent of the parties, and, because such a determination is factual, it is subject to reversal on appeal only if it is clearly erroneous." *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007).

In the present case, even though there is arguably some ambiguity in the mortgage deed, the record contains no extrinsic evidence as to the conduct of the parties to the mortgage instruments in question, or their intent in agreeing thereto. Thus, the trial court's determination of the parties' intent was based solely on the language of the mortgage deed and did not involve the resolution of any evidentiary issues of credibility.[13] Id., 7–8. Accordingly, our review of the trial court's interpretation of the mortgage deed involves a question of law over which our review is plenary. Id., 8.

At the outset, we note a critical difference between first class and certified mail. When a letter is sent by certified mail, there are additional steps that the recipient must perform to receive the letter compared to first class mail.[14] United States Postal Service, Domestic Mail Manual: Mailing Standards of the United States Postal Service 508.1.1.7 (May 11, 2009), available at https://pe.usps.com/Archive/PDF/DMMArchive20090511/508.pdf (last visited March 21, 2018). If the intended recipient is not available at the time a mail carrier attempts to deliver the letter, a notice of attempted delivery is left at the recipient's address and the mail is returned to the post office. Id., 508.1.1.7. The recipient

has a limited period of time to retrieve the certified mail letter from the post office before it is returned to the sender. Id., 508.1.1.7.

At trial, the plaintiff's witness, Kovalic, acknowledged that critical distinction between certified mail and first class mail. He stated: "[E]ven though we're only required to send by first class, in an effort to be more thorough and make sure regulatory things, briefs, letters, demand letters, acceleration letters, they're only required to be sent by first class mail, but we send them by certified mail in order to have an extra layer of security there. Plus, you don't want your neighbors to open up your mail, just throw it in your mailbox, you want your mailman to give you something like a notice like that personally. . . . If you have a mailbox anybody can open your mailbox and pull your mail out. You're delivering something by certified mail, the mailman has to hand it to you or you have to go to the post office and personally pick it up . . . an agent or the addressee . . . are the only people that can pick it up."

In considering the express language of the mortgage deed, the two types of mailings underscore what other jurisdictions have identified as the effective difference between the two mailings. First class mail enjoys a presumption of actual delivery, while other mailing services, to effect their purpose, necessarily require proof of actual delivery. Various courts in this country have noted such a distinction between first class and certified mail, including the United States Supreme Court. In *Jones* v. *Flowers*, 547 U.S. 220, 237, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), the United States Supreme Court recognized that the use of certified mail for official notices may have significant benefits for governmental agencies, because "[u]sing certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received." Id. Of great significance to the present appeal is the court's observation that "the use of certified mail might make actual notice less likely in some cases— the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time." Id., 235.

Other courts have similarly acknowledged a distinction between first class mail and certified mail. In *In re Frazier*, 394 B.R. 399, 400 (Bankr. E.D. Va. 2008), the court expounded on the method of delivery for certified mail. It stated: "Certified mail is an additional service available for first class mail. First class mail is simply delivered to the address. The addressee need not be home. In fact, the postal service does not usually make any effort to determine whether anyone is at home. It simply leaves the mail in the mailbox. . . . Certified mail, return receipt requested, tends to reduce later challenges by showing that the mail was actually delivered to the address of record and that the defen-

dant had actual notice of the proceeding because the defendant must sign for the mail in order to receive it. It is understandable that plaintiffs like this additional assurance; however, the drawback is that if the defendant is not home, the summons and complaint may never be delivered to him." Id., 400–401; see also *In re Eleva, Inc.*, United States District Court, Docket No. 2:00CV178K (D. Utah April 17, 2000) ("Because there are differences between first class and certified mail [i.e., certified mail requires an affirmative act by a defendant to obtain an unidentified package that is being held by the post office, and the plaintiff receives actual notice regarding whether the defendant actually received the package], this court finds that service by certified mail is not sufficient, unless the defendant actually receives the mail"); *In re Sheffer*, 440 B.R. 121, 122 (Bankr. E.D. Va. 2009) ("The Federal Rules of Bankruptcy Procedure permit service by first class mail on debtors. First class mail, however, is not the same as certified mail. Certified mail imposes additional obligations and the mail may not be received timely by the named recipient.").

We acknowledge that some courts do not distinguish between certified mail and first class mail, relying on the proposition that certified mail is a form of first class mail. See *Gossett* v. *Federal Home Loan Mortgage Corp.*, 919 F. Supp. 2d 852, 859 (S.D. Tex. 2013) ("[a]ctual receipt of the notice is not necessary" [internal quotation marks omitted]); *Session* v. *Director of Revenue*, 417 S.W.3d 898, 903 (Mo. App. W.D. 2014) ("[c]ertified mail is a form of first class mail and, therefore, [the plaintiff] received notice by first class mail"). Those cases, however, are not persuasive to the extent that they fail to address the manner of delivery when certified mail is utilized.

In construing the language used in § 15 of the mortgage deed and its requirement to show actual delivery for services other than first class mail, we are therefore persuaded by the cases that consider the effect of mail sent by certified mail versus first class mail. For example, in cases arising in the context of a foreclosure proceeding, the Court of Appeals of Ohio held that "no presumption of delivery arose" where the plaintiff failed to comply with the notice requirement in the context of a foreclosure proceeding because the plaintiff "did not mail a notice of default by ordinary mail, either contemporaneously with its certified-mail notice or after return of the certified-mail envelope." *National City Mortgage Co.* v. *Richards*, 182 Ohio App. 3d 534, 545, 913 N.E.2d 1007 (2009). The court in *National City Mortgage Co.* noted: "[The plaintiff] did not send the notice of default via first class mail. Instead, it sent the written notice of default by certified mail to [the defendant] at the property address." Id., 544. Courts in other jurisdictions have also held that where a statute or insurance policy requires that notice of cancellation

of the policy be "mailed," notice sent by certified mail or registered mail does not comply with the "mailing" requirement, but instead constitutes an attempt at actual delivery, which is effective only upon receipt. See, e.g., *Cornhusker Casualty Ins. Co.* v. *Kachman*, 514 F.3d 982, 987–88 (9th Cir. 2008) ("a majority of other jurisdictions that have considered whether certified mail qualifies as mail for purposes of notice of insurance cancellation have held that notice sent by certified mail, when not actually received, is insufficient to effect cancellation"); *Cornhusker Casualty Ins. Co.* v. *Kachman*, 165 Wn. 2d 404, 411, 198 P.3d 505 (2008) ("Since certified mail requires more of the insured to effect delivery of a notice of cancellation, it does not satisfy the 'mailed' prong of the statute. Certified mail, as a request of the United States post office to actually deliver a letter to the insured, falls under the 'actually delivered' prong of [the statute]." [Emphasis omitted.]).

We also are unpersuaded by the plaintiff's invocation of the mailbox rule to substantiate its construction of the presumption contained in § 15 of the mortgage deed. That contractual presumption appears to correspond with the common-law presumption known as the "mailbox rule," which provides that "a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received." *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 418, 880 A.2d 882 (2005). As the trial court acknowledged, our court, in *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 211–12, 804 A.2d 1027 (2002), has applied the mailbox rule to certified mail in the context of a grievance proceeding. The plaintiff in that case failed to respond to a grievance complaint. Id., 207. The notice of the complaint was sent by certified mail, but there was an absence of a copy of the return receipt in the record. Id., 208. The court held that "the mailing of a properly addressed letter creates a presumption of timely notice unless contrary evidence is presented. . . . In attempting to rebut the presumption, the plaintiff offered no evidence to support his allegation that he did not receive a copy of the complaint except his own testimony that he was having trouble getting mail delivered and the absence of a copy of the certified mail receipt in the record." (Citations omitted.) Id., 211–12. As such, the court held that the plaintiff failed to overcome the presumption of timely notice. Id., 212.

It nevertheless remains that the presumption at issue in the present case arises in the contractual context— namely, a mortgage agreement. It is well established that a "contract must be viewed in its entirety, with each provision read in light of the other provisions . . . ." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 192, 112 A.3d 144 (2015). The plain intent of the notification requirements set

forth in §§ 15 and 22 of the mortgage deed is to provide notice of a default to a mortgagee prior to the commencement of a foreclosure proceeding. Those notification requirements are not mere formalities but, rather, constitute a condition precedent to the commencement of foreclosure actions like the present case. See *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 710 ("when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure" [internal quotation marks omitted]). That context distinguishes the present case from numerous decisions, such as *Daniels* v. *Statewide Grievance Committee*, supra, 72 Conn. App. 203, addressing the presumption of mail delivery. When properly viewed in that context, the additional restrictions imposed on the delivery of first class mail by certified mail; see footnote 14 of this opinion; which make actual delivery "less likely" in many cases; *Jones* v. *Flowers*, supra, 547 U.S. 235; compels the conclusion that certified mail is properly construed as "other means" of mail service, for which actual delivery is required under § 15 of the mortgage deed. Accordingly, we conclude that the notice sent by Aurora Loan to the defendants in 2009 was done so "by other means." Section 15 of the mortgage deed thus indicates that the notice is "deemed to have been given to Borrower . . . when actually delivered to Borrower's notice address . . . ."

The plaintiff has failed to submit a return receipt or any other evidence into the record to prove that the notice of default was actually delivered to the defendants by certified mail. The court, therefore, improperly determined that the plaintiff satisfied its burden of proof pursuant to § 15 of the mortgage deed to establish that Aurora Loan complied with the notification requirements in the present case.

C

We next consider the plaintiff's alternative argument that Aurora Loan substantially complied with the notice of default provision when it sent the notice of default letter by certified mail. The trial court applied the doctrine of substantial compliance and concluded that Aurora Loan had substantially complied with the provisions of § 15 of the mortgage deed when it sent the default letter to the defendants by certified mail. The doctrine of substantial compliance, however, is not appropriate in the present case.

We first set out our standard of review for the plaintiff's substantial compliance claim. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Johnson*

*Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 344, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002). "Whether a party to a contract substantially performs its obligations thereunder is ordinarily a question of fact to be determined by the fact finder. . . . Substantial performance occurs when, although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, [the defendants have] received substantially the benefit [they] expected, and [are], therefore, bound to [perform]." (Citation omitted; internal quotation marks omitted.) *Pack 2000, Inc.* v. *Cushman*, 311 Conn. 662, 685, 89 A.3d 869 (2014).

Our Supreme Court in *Pack 2000, Inc.*, identified the well established principles that guide our analysis of the plaintiff's substantial compliance claim. "[T]he general rule with respect to compliance with contract terms . . . is not one of strict compliance, but substantial compliance. . . . The doctrine of substantial compliance is closely intertwined with the doctrine of substantial performance. . . . The doctrine of substantial performance shields contracting parties from the harsh effects of being held to the letter of their agreements. Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial." (Citations omitted; internal quotation marks omitted.) Id., 675.

We recently discussed the doctrine of substantial compliance in *21st Century North America Ins. Co.* v. *Perez*, 177 Conn. App. 802, 815, 173 A.3d 64 (2017), cert. denied, 327 Conn. 995, 175 A.3d 1246 (2018). "[T]he proper application of the doctrine of substantial performance requires a determination as to whether the contractual breach is material in nature. . . . [T]he doctrine of substantial performance applies only where performance of a *nonessential* condition is lacking, so that the benefits received by a party are far greater than the injury done to him by the breach of the other party." (Emphasis in original; internal quotation marks omitted.) Id.

The plaintiff relies on three Appellate Court decisions to support the proposition that the doctrine of substantial compliance applies in the context of compliance with the method of mailing identified in the notice of default provision, i.e., the contractual condition precedent to foreclosure. See *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008); *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 902 A.2d 24 (2006); *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App.

700.[15] Those cases cited are factually distinguishable, as they all involved the application of the doctrine of substantial compliance to the contents of the notice itself. In each instance, the notice of default was actually received by the defendants.

In the present case, there is no evidence in the record that the notice of default was actually received as a result of the notice sent by certified mail. In fact, the defendants alleged that they never received the notice. The plaintiff now asks for us to apply the doctrine of substantial compliance to the method of mailing and the corresponding proof required to establish that the notice was received by the defendants. While we acknowledge the doctrine of substantial compliance applies in the context of reviewing the substance of the default notice, we decline to apply the doctrine where there is a contractual provision requiring proof of actual delivery for a notice of default sent by certified mail, return receipt requested, and there is no evidence that the defendants actually received the notice of default.

Accordingly, the plaintiff failed to satisfy the contractual condition precedent to foreclosure because it failed to prove that the defendants received the notice of default letter.

### III

The defendants' final claim is that a statutory condition precedent to the action failed because the plaintiff failed to introduce into evidence the certified mail receipt confirming that the mortgage program notice required by § 8-265ee (a) was actually delivered by certified mail. We note that, similar to the default notice, the defendants do not claim that the admission of the mortgage program notice into evidence was improper. Rather, the defendants claim that § 8-265ee (a) requires proof of actual delivery by certified mail and the plaintiff failed to meet that requirement. We disagree with the defendants' interpretation of the statute.

We begin our review with the relevant standard of review. "To the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review also is plenary. . . . That review is guided by well established principles of statutory interpretation. . . . As with all issues of statutory interpretation, we look first to the language of the statute. . . . In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Citation omitted; internal quotation marks omitted.) *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

Section 8-265ee (a) provides in relevant part: "On and after July 1, 2008, a mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsec-

tion (e) of section 8-265ff, *shall give notice to the mortgagor by registered, or certified mail*, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. . . ." (Emphasis added.)

The defendants essentially argue that the language of § 8-265ee (a) requires that the plaintiff submit a proof of mailing receipt from the United States Post Office to satisfy the statutory condition precedent to foreclosure. The plain language of § 8-265ee (a) contains no such requirement. Section 8-265ee (a) provides that "a mortgagee . . . shall give notice to the mortgagor by registered, or certified mail . . . ." The defendants fail to cite case law in support of their interpretation of the statute and we decline to extend the requirements of the statute beyond the plain language to require proof of actual delivery. As one Superior Court judge recently noted, "§ 8-265ee (a) does not require the mailing by return receipt requested." *Bank of America, N.A.* v. *Robles*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5011137-S (February 16, 2017).

The defendants also appear to challenge the admissibility of Kovalic's testimony regarding the "notes" in the files that identified that the mortgage program notice was sent. Similar to our analysis in part II A of this opinion, the admission of Kovalic's testimony regarding his review of the record and the notes in the file was harmless because the evidence was cumulative. In addition, Kovalic testified as to other indications that revealed that the mortgage program notice had been sent, including "a tracking number for the mail under the barcode at the top." Further, Kovalic testified as to his understanding of the mailing of the mortgage program letter as follows:

"[The Plaintiff's Counsel]: Now, is your understanding that the record of this document in DocTrack is it—would it be generated in a similar [way] as it would [the default notice]?

"[Kovalic]: It would be the exact same thing and that's why the dates are important, because these letters, and I apologize as I'm not an attorney in the state of Connecticut, but these letters are traditionally, to the best of knowledge, sent at the same time and are required to be sent at or around the same time period.

"So just like the demand letter would have been generated, printed, folded by a machine, put in an envelope, and sent. [The mortgage program notice] would have been generated the same way. This is not a personalized letter, per se, somebody didn't sit and type this out word for word just like they didn't with the demand letter. There's certain information that's put into a system to generate this.

"And on [the default notice], I mean, there's—it basically it tells you that the mail has already been paid for, you know, that's usually not stamped unless it's been paid. So, you know, from my review of the file I can ascertain that this went to the homeowners roughly through that same process of being printed, of being generated, folded in the mailroom, put in an envelope. All this is done mechanically, and has been for years, and was sent—was put in the mail."

As a result, the record supports the trial court's finding that the mortgage program notice was sent by certified mail. The statute does not require a return receipt and the lack of a return receipt in the record does not affect the plaintiff's compliance with the statute. Accordingly, the plaintiff has satisfied this statutory condition precedent to foreclosure.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendants.

In this opinion the other judges concurred.

[1] Subsequent encumbrancers were also named as defendants in the trial court including National City Bank (National City), People's United Bank (People's United), formerly known as People's Bank, and Rosenthal & Rosenthal, Inc. (Rosenthal). Defaults were entered against People's United, Rosenthal, and National City. In this opinion, we refer to Karen Condron and James L. Condron as the defendants.

[2] Aurora Loan Services, LLC (Aurora Loan), commenced this action to foreclose a mortgage on real property owned by the defendants and located at 92 Chestnut Hill Road in Wilton (property). On April 8, 2013, Aurora Loan moved to substitute Nationstar Mortgage, LLC, as the plaintiff in the present action and the court granted the motion to substitute on May 1, 2013.

[3] Section 15 of the mortgage deed provides that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument *shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means*." (Emphasis added.)

[4] The parties stipulated at trial that the plaintiff is a successor in interest to Aurora Loan.

[5] Section 9.04 (a) of the trust agreement provides in pertinent part that the master servicer and each servicer "shall have full power and authority (to the extent provided in the applicable Servicing Agreement) to do any and all things that it may deem necessary or desirable in connection with the servicing and administration of the Mortgage Loans, including but not limited to the power and authority . . . to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan . . . ." Section 9.04 (a) further provides in relevant part that "[t]he Trustee shall furnish the Master Servicer or a Servicer, upon request, with any powers of attorney prepared by the Master Servicer or such Servicer empowering the Master Servicer or such Servicer . . . to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the Mortgage Loans or the Mortgaged Property . . . ."

[6] The defendants claim that the plaintiff does not have authority to bring a foreclosure action in its own name. A similar argument was rejected by our Supreme Court in *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 330–31 n.22. In *J.E. Robert Co.*, the defendants argued that even if the pooling agreement controlled the issue of standing, nothing in that document or in the power of attorney conferred upon the plaintiff any right or authority to commence a foreclosure action on its own behalf and in its own name. Id., 330 n.22. Our Supreme Court rejected that argument by citing to a provision in the pooling agreement that required written consent by the note's owner and holder to initiate the action in the plaintiff's name.

Id., 330–31 n.22. "In fact, § 3.01 (b) of the pooling agreement provides that the special servicer 'shall not, without [LaSalle Bank National Association's] written consent . . . initiate any action, suit or proceeding solely under [LaSalle Bank National Association's] name without indicating . . . the [s]pecial [s]ervicer's . . . representative capacity. . . .' The logical implication of this language, preceded directly by language seeking to protect the trustee from incurring negligence as a result of actions by the special servicer and viewed in connection with the authority otherwise vested in the special servicer, is that the special servicer may initiate an action in its own name." Id. Similarly, the trust agreement in the present case provides that the master servicer "shall not without Trustee's written consent . . . initiate any action, suit or proceeding solely under the Trustee's name without indicating the Master Servicer's representative capacity . . . ." It follows that the plaintiff may initiate an action in its own name.

[7] Kovalic testified as to the provisions of the trust agreement, including the definition of "Master Servicers" to include "[Aurora Loan] or any successor in interest" and § 9.04 of the Trust Agreement.

[8] In addition, § 9.04 (a) of the trust agreement provides that "[t]he Trustee shall furnish the Master Servicer or a Servicer, upon request, with any powers of attorney prepared by the Master Servicer or such Servicer empowering the Master Servicer or such Servicer . . . to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the Mortgage Loans or the Mortgaged Property . . . ."

Section 9.20 (a) of the trust agreement provides in pertinent part that "[t]he Master Servicer shall use its reasonable best efforts to, or to cause each Servicer to, foreclose upon, repossess or otherwise comparably convert the ownership of Mortgaged Properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments, all in accordance with the applicable Servicing Agreement."

[9] The following colloquy transpired: "[The Plaintiff's Counsel]: You indicated that in addition to the documents, such as [the default notice], that there are notes that are uploaded with regard to the previous history—

"[Kovalic]: Correct.

"[The Plaintiff's Counsel]: —is that correct? Have you had an opportunity to review those notes?

"[Kovalic]: Yes.

"[The Plaintiff's Counsel]: Did the notes indicate that this document was sent?

"[Kovalic]: Yes."

[10] The computer records were sent from Aurora Loan and are contained in a computer system titled LSAMS.

[11] In addition, referencing his familiarity with the industry practice related to the creation and distribution of the letter, Kovalic testified: "But, like I said, just looking at [the letter] I can tell it was mailed, as is industry practice, this letter wouldn't even be generated unless it was mailed. General industry practice, even at this time was, when these are generated they go through the mailroom, they're folded by machine, and they're automatically put in the mail. So when it's sent—and it's then sent."

[12] To be clear, the defendants do not challenge whether the information contained in the notice was proper. Rather, the defendants challenge whether the method of delivery was proper.

[13] Furthermore, we recognize that § 15 of the mortgage deed is a uniform covenant contained in a Fannie Mae/Freddie Mac Uniform Instrument. See Plaintiff's Exhibit 2. Such uniform covenants are afforded "one uniform meaning rather than multiple inconsistent meanings." *Kolbe* v. *BAC Home Loans Servicing, LP*, 738 F.3d 432, 436 (1st Cir. 2013); see also *Johnson* v. *IndyMac Mortgage Servicing*, Docket No. Civil Action 12-10808-MBB, 2014 WL 1652594, *7 (D. Mass. April 22, 2014).

Moreover, "[e]xtrinsic evidence of the parties' unique intentions regarding a uniform clause is generally uninformative because unlike individually tailored contracts, uniform clauses do not derive from the negotiations of the specific parties to a contract. Instead, courts seek to determine the uniform meaning of the clause as a matter of law . . . ." *Kolbe* v. *BAC Home Loans Servicing, LP*, supra, 738 F.3d 436–37; see also *Sharon Steel Corp.* v. *Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982) ("Boilerplate provisions are thus not the consequence of the relationship of particular borrowers and lenders and do not depend upon particularized intentions of the parties to an indenture. There are no adjudicative facts relating to the parties to the litigation for a jury to find and the meaning of

boilerplate provisions is, therefore, a matter of law rather than fact."), cert. denied, 460 U.S. 1012, 103 S. Ct. 1253, 75 L. Ed. 2d 482 (1983); 2 Restatement (Second), Contracts § 211 (2), pp. 119–20 (1981) (standardized agreements are interpreted "wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"); 2 E. Farnsworth, Contracts (3d Ed. 2004) § 7.9, p. 285 ("[i]nterpretation cannot turn on meanings that the parties attached if they attached none, but must turn on the meaning that reasonable persons in the positions of the parties would have attached if they had given the matter thought"). Accordingly, we seek to determine the uniform meaning of § 15 of the mortgage deed as a matter of law.

[14] First class mail and certified mail are terms defined and used in the Code of Federal Regulations, as set forth in the United States Postal Service's Domestic Mail Manual. 39 C.F.R. § 111.1 (2009); see *Lee* v. *AIG Casualty Co.*, 919 F. Supp. 2d 219, 226 (D. Conn. 2013) ("[t]he Domestic Mail Manual is the authoritative document published by the administrative agency in charge of mailing service"); *Horton* v. *Washington County Tax Claim Bureau*, 623 Pa. 113, 132, 81 A.3d 883 (2013) (*Baer, J.*, dissenting) ("All of these terms—certified mail, restricted delivery, return receipt requested, and postage prepaid—are types of mailings and services added to the mailing; they are not burdens of evidentiary proof that may be provided by a mailer. Indeed, they are terms contained and defined within the Code of Federal Regulations, as incorporated by the United States Postal Service, Domestic Mail Manual.").

The Domestic Mail Manual 508.1.1.7 addresses "Basic Recipient Concerns" including conditions placed on certified mail and return receipt requested, and provides in relevant part:

"The following conditions also apply to the delivery of Express Mail and accountable mail (Registered Mail, Certified Mail, insured for more than $200.00, or COD, as well as mail for which a return receipt or a return receipt for merchandise is requested or for which the sender has specified restricted delivery):

"a. The recipient (addressee or addressee's representative) may obtain the sender's name and address and may look at the mailpiece while held by the USPS employee before accepting delivery and endorsing the delivery receipt.

"b. The mailpiece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee.

"c. Suitable identification can be required of the recipient (if not known to the USPS employee) before delivery of the mailpiece.

"d. When delivery is not restricted at the sender's request, mail addressed to a person at a hotel, apartment house, etc., may be delivered to any person in a position to whom mail for that location is usually delivered.

"e. USPS responsibility ends when the mailpiece is delivered to the recipient (or another party, subject to 1.1.7d and 1.0).

"f. A notice is left for a mailpiece that cannot be delivered. If the piece is not called for or redelivery is not requested, the piece is returned to the sender after [fifteen] days ([five] days for Express Mail, [thirty] days for COD), unless the sender specifies fewer days on the piece. . . ." United States Postal Service, Domestic Mail Manual: Mailing Standards of the United States Postal Service 508.1.1.7 (May 11, 2009), available at https://pe.usps.com/Archive/PDF/DMMArchive20090511/508.pdf (last visited March 21, 2018).

[15] In *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 709–10, the plaintiff conceded that its notice of default did not expressly set forth that the defendants had the right to reinstate their mortgage after the debt had been accelerated or their right to contest foreclosure in court. Nonetheless, because the defendants had received sufficient actual notice of these rights, and "the plaintiff's deficient written notice caused no harm," this court concluded that the plaintiff had "substantially complied" with the stipulated notice requirements. Id., 712–13.

In *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, supra, 96 Conn. App. 623, this court stated that although generally "contracts should be enforced as written," we will not require "mechanistic compliance" with the letter of notice provisions if the particular circumstances of a case show that the actual notice received resulted in no prejudice and fairly apprised the noticed party of its contractual rights. (Internal quotation marks omitted.) Notably, we prefaced our analysis with the following statement: "Significantly, this is not a case in which the defendant never received notice

of the plaintiff's decision. He merely received late notice." Id., 622.

In *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, supra, 110 Conn. App. 375–76, this court held that "[a]ny possible discrepancy between the terms of the mortgage and the plaintiff's notices caused no harm to the defendant because he had sixty-five days of actual notice in which to protect his property rights. . . . [Therefore] the plaintiff substantially complied with the notice requirements in the defendant's mortgage."

———————————————