******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

THE BANK OF NEW YORK MELLON,
TRUSTEE *v.* JOHN
MAZZEO ET AL.
(AC 42180)

Keller, Prescott and Harper, Js.

*Syllabus*

The plaintiff bank, M Co., sought to foreclose a mortgage on certain real
property owned by the defendants J and L. At trial, the court denied
the motion for judgment filed by J and L, which was based on their
claim that M Co. failed to make out a prima facie case because a condition
precedent to foreclosure, namely, notice of default prior to acceleration,
had not been proven. The trial court rendered a judgment of foreclosure
by sale, from which J and L appealed to this court. *Held:*

1. J and L could not prevail on their claim that M Co. lacked standing, which
   was based on their claim that M Co. failed to establish that it was the
   holder of the note when it commenced the present action: M Co.'s
   production of the original note at trial, as well as the admission into
   evidence of the copy of the note through H, a litigation manager for B
   Co., the subservicer for the loan securing M Co.'s mortgage to J and L's
   property, raised a presumption that M Co. was the holder of the note,
   and it then became the burden of J and L to rebut that presumption in
   order to challenge M Co.'s right to enforce the note, which they failed
   to do; moreover, even though J and L claimed that the court improperly
   admitted into evidence the routing history of the loan, that evidence
   was not necessary to prove that M Co. was a holder of the note, as M
   Co. produced the note, which was endorsed in blank, and, thus, the
   challenge by J and L to the admission of the routing history, even if
   valid, did not rebut the presumption that M Co. owned the debt when
   this action commenced.

2. The trial court improperly concluded that M Co. proved its prima facie
   foreclosure case: even though J and L could not prevail on their claim
   that M Co. did not demonstrate that it was the owner of the debt,
   M Co. did not prove that all conditions precedent to foreclosure, as
   established by the note and mortgage, had been satisfied, specifically,
   M Co. did not demonstrate that it provided J and L with notice of default,
   as the plain language of the mortgage note required that notices of
   default be sent by first class mail, and the default notice admitted into
   evidence and H's accompanying testimony did not provide sufficient
   facts for a trier of fact reasonably to infer that the notice was mailed
   to J and L; moreover, A Co., the master servicer of the loan, generated
   the default notice, and H, as a representative of B Co., the subservicer
   for the loan, was not able to testify as to the practices A Co. employed
   to generate or mail default notices, and H's sole basis for claiming that
   notice was mailed was the existence of the notice and a screenshot
   from A Co.'s servicing platform that included a breach and expiration
   date consistent with the date on the default notice; furthermore, H
   provided no pertinent details regarding B Co.'s boarding process or
   methods of verification, and although H testified that the screenshot
   was part of the verification process for the mailing of the default notice,
   H lacked personal knowledge of the policies and procedures used to
   generate the screenshot; accordingly, the evidence was insufficient to
   support the court's determination that a default notice was sent to J
   and L via first class mail, and, thus, M Co. failed to prove a prima facie
   foreclosure case.

Argued October 15, 2019—officially released January 21, 2020

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty owned by the named defendant et al., and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield and tried to the court, *Hon. Michael*

*Hartmere*, judge trial referee; judgment of foreclosure by sale, from which the named defendant et al. appealed to this court. *Reversed; judgment directed.*

*Janine M. Becker*, with whom, on the brief, was *Patricia Moore*, for the appellants (named defendant et al.).

*Benjamin Staskiewicz*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendants, John Mazzeo and Linda Mazzeo,[1] appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, The Bank of New York Mellon, formerly known as The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-56, Mortgage Pass-Through Certificates, Series 2005-56. The defendants claim that the plaintiff (1) lacked standing to bring the present action and (2) failed to prove its prima facie case.[2] We disagree with the defendants' first claim but agree with the defendants' second claim and, accordingly, reverse the judgment of the court.

Following a two day bench trial, the court issued a memorandum of decision setting forth the following findings of fact and procedural history: "On August 17, 2012, the plaintiff . . . filed this foreclosure complaint against the defendants . . . . On November 3, 2014, the defendants filed an answer and special defenses and setoffs.[3] . . . The matter was tried to the court on April 24 and April 25, 2018, subsequent to which the parties submitted posttrial briefs. Based on the submissions of the parties and the evidence presented at trial, the court makes the following findings.

"The defendant, John Mazzeo, executed an adjustable rate note[4] dated July 25, 2005, in the amount of $532,000, originally in favor of Countrywide Bank, a division of Treasury Bank, N.A. As of August 10, 2012, the date of the underlying [c]omplaint, the plaintiff was the owner and holder of the underlying note . . . . The court examined the original underlying documents during the trial. The note was secured by an open end mortgage deed concerning 36 Shady Lane, Monroe, Connecticut which was recorded on the Monroe land records. Bayview Loan Servicing, LLC (Bayview) is the current loan servicer for the plaintiff. Lauren Haberlan, a litigation manager for Bayview, testified extensively concerning Bayview's business records and how those records are made, maintained and verified for accuracy in the ordinary and usual course of business. She testified as to how historical loan servicing records for this loan were obtained, reviewed and audited for accuracy before they were incorporated by Bayview as their own business records.

"Haberlan testified that the note was signed by defendant John Mazzeo and that the note was endorsed in blank. The plaintiff received the original note on September 23, 2005, and sent the note to [the] plaintiff's counsel, on September 19, 2011. The mortgage deed, dated July 25, 2005, was signed by the defendants, John and Linda Mazzeo, and recorded in the Monroe land records. The mortgage deed secured property located at 36 Shady Lane, Monroe, Connecticut. An assignment of mortgage dated August 18, 2011, to the plaintiff also

was recorded on the Monroe land records.

"There were a number of prior loan servicers for this loan prior to Bayview.[5] Bayview was given a limited power of attorney to act on behalf of the plaintiff.

"The defendants were issued written notices of default by one of the prior loan servicers, which were sent to the defendants at the property address. Written notices of default were sent to the defendants on January 27 and February 16, 2010. Under the terms of the mortgage deed, notice to one borrower is considered notice to all borrowers.

"The plaintiff presented a complete loan history, evidence and backup of the debt, and a demonstrative exhibit detailing the overall debt calculation. All loan charges, fees and calculations constituting the total debt were documented. The parties have stipulated that the fair market value of 36 Shady Lane, Monroe, [Connecticut] is $414,000. The testimony and exhibits presented at trial established a total debt of $892,770.14. The addition of a per diem interest charge of $82.56 from April 24, 2018, to August 27, 2018, will bring the total debt to $903,090.14. The court will allow appraisal fees (three appraisals) in the total amount of $1005 and a statutory title search fee of $225.

"Thus, the plaintiff established a prima facie case for foreclosure. The plaintiff established that it is the owner and holder of the underlying note; that the note is endorsed in blank; that the plaintiff and or its agents have been in possession of the original note since prior to the commencement of this foreclosure action; that the plaintiff is the current mortgagee of record; that the plaintiff issued written notices of default to the defendants; that the defendants failed to cure the underlying default; that the plaintiff issued proper [Emergency Mortgage Assistance Program] notices to the defendants, and that the loan is in default and currently due for the January 1, 2010 mortgage payment. When the defendants failed to cure the default, the plaintiff accelerated the note and began these foreclosure proceedings." (Footnotes added.)

In its decision, the court found no merit in the defendants' special defenses and setoffs. The court rendered a judgment of foreclosure by sale with a sale date to be set by the court upon resolution of the attorney's fees.[6] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendants first claim that the plaintiff lacked standing to bring the present action. In particular, the defendants claim that the plaintiff failed to establish that it was the holder of the note at the time it commenced the present action. The plaintiff argues that it had proved its status as holder and, thus, had standing to bring the present action, by virtue of its possession

of the note and blank endorsement. We disagree with the defendants and conclude that the plaintiff had standing to bring this action.

The following additional facts are relevant to the disposition of this claim. At trial, the plaintiff's counsel produced the original note for review by opposing counsel and the court.[7] After the court stated that it had reviewed the original note, the plaintiff's counsel offered for admission into evidence exhibit 7, a copy of the original note, through its witness Lauren Haberlan,[8] a litigation manager for Bayview, the subservicer for the loan securing the plaintiff's mortgage to the defendants' property. After the court admitted into evidence the copy of the note, Haberlan testified that the signature page of the note contained two endorsements, one of which was an endorsement in blank. Haberlan further testified that the plaintiff was the holder of the note at the commencement of the action, which was August 14, 2012. The plaintiff's counsel also offered for admission into evidence exhibit 8, a document that detailed the routing history for the loan in question. Once the court admitted into evidence exhibit 8, Haberlan testified, consistent with the information set forth in the routing history, that "on [September 23, 2005], the [loan's] collateral documents were with [the plaintiff]."

"The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time.[9] . . . [T]he plaintiff ultimately bears the burden of establishing standing." (Citations omitted; footnote added; internal quotation marks omitted.) *Wells Fargo Bank*, *N.A.* v. *Strong*, 149 Conn. App. 384, 397–98, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property. . . . Whether a party is entitled to enforce a promissory note is determined by the provisions of the Uniform Commercial Code, as codified in General Statutes § 42a-1-101 et seq.

. . . Under [the Uniform Commercial Code], only a holder of an instrument or someone who has the rights of a holder is entitled to enforce the instrument. . . . When a note is endorsed in blank, any person[10] in possession of the note is a holder and is entitled to enforce the instrument. General Statutes §§ 42a-1-201 (b) (21) (A), 42a-3-205 (b) and 42a-3-301." (Emphasis omitted; footnote added; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, 159 Conn. App. 483, 488–89, 124 A.3d 890, cert. denied, 320 Conn. 903, 127 A.3d 186 (2015), cert. denied,      U.S.     , 136 S. Ct. 2466, 195 L. Ed. 2d 801 (2016).

"The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt . . . . The defendant [must] set up and prove the facts which limit or change the plaintiff's rights. . . . The possession by the bearer of a note [e]ndorsed in blank imports prima facie [evidence] that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citation omitted; internal quotation marks omitted.) Id., 489.

In *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 145–46, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016), this court elaborated that "[i]f the foreclosing party produces a note demonstrating that it is a valid holder of the note, the court is to presume that the foreclosing party is the rightful owner of the debt. . . . The defending party may rebut the presumption that the holder is the rightful owner of the debt, but bears the burden to prove that the holder of the note is not the owner of the debt. . . . This may be done, for example, by demonstrating that ownership of the debt had passed to another party. . . . The defending party does not carry its burden by merely identifying some documentary lacuna in the chain of title that *might* give rise to the possibility that a party other than the foreclosing party owns the debt. . . . To rebut the presumption that the holder of a note endorsed specifically or to bearer is the rightful owner of the debt, the defending party must prove that another party is the owner of the note and debt. . . . Without such proof, the foreclosing party may rest its standing to foreclose the mortgage on its status as the holder of the note." (Citations omitted;

emphasis in original.)

Here, the plaintiff's production of the note at trial, as well as the introduction into evidence of the copy of the note through Haberlan, raised the presumption that the plaintiff was the valid holder of the note. See *U.S. Bank, N.A.* v. *Ugrin*, 150 Conn. App. 393, 403–404, 91 A.3d 924 (2014) (plaintiff's production of original note at trial was prima facie evidence that plaintiff was holder of note and had standing); *Deutsche Bank National Trust Co.* v. *Bliss*, supra, 159 Conn. App. 494–95 (plaintiff's production of copy of note, together with witness testimony, was prima facie evidence that plaintiff was holder of note and had standing); *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 131, 74 A.3d 1225 (2013) (plaintiff's production of copy of note endorsed in blank, certified copy of mortgage, and assignment of note and mortgage to plaintiff was prima facie evidence that plaintiff was holder of note and had standing).

Once the plaintiff produced the note, endorsed in blank at trial, it became the defendants' burden to rebut that presumption and to challenge the plaintiff's right to enforce the note. The defendants do not directly challenge the plaintiff's production of the note as a means of proving standing but, rather, claim that without the admission into evidence of the routing history in exhibit 8, the plaintiff was not able to prove that it was the holder of the note on the date the action was commenced. The defendants purport that "[t]he [r]outing [h]istory was the only documentary evidence which suggest[ed] that [the plaintiff] was the holder of the [n]ote at the time the action was commenced."[11] The defendants challenge the admission of the routing history on the basis that, over the objection of the defendants' counsel, the court improperly admitted it pursuant to the business records exception to the hearsay rule. We disagree with the defendants' assertion that the admission into evidence of the routing history was necessary to prove that the plaintiff was the holder of the note. In making this argument, the defendants neglect to acknowledge that the plaintiff's production of the note endorsed in blank raised a presumption that it was the holder of the note, and the defendants then bore the burden of rebutting that presumption. The contents of the routing history merely supported the plaintiff's position that it was the holder of the note at the time the action was commenced. Thus, the defendants' challenge to the admissibility of the routing history, even if valid, does not rebut the presumption that arose by virtue of the evidence that the plaintiff had possession of the note endorsed in blank at the time of trial.

Therefore, we need not reach the defendants' contention regarding the admission of the routing history because, even if the defendants are correct in their assertion that the routing history should not have been

admitted into evidence, that argument would in no way aid them in rebutting the presumption raised by the plaintiff's production of the note. Specifically, the absence of the routing history would not aid the defendants in demonstrating that a party other than the plaintiff was the holder of the note at the time the action was commenced. The plaintiff contends, and we agree, that the defendants' present argument is wholly focused on the admission of the routing history and overlooks other critical evidence, namely, the production of the original note endorsed in blank and the admission into evidence of the copy of the original note and the endorsement. Throughout the two day trial, the defendants did not offer any evidence to rebut the presumption that the plaintiff, as the holder of the note, owned the underlying debt at the commencement of the action in August, 2012. See *HSBC Bank USA, N.A.* v. *Navin*, 129 Conn. App. 707, 712, 22 A.3d 647 (plaintiff was deemed to have standing because defendants offered no evidence challenging plaintiff's assertion that it possessed the note at the commencement of the action), cert. denied, 302 Conn. 948, 31 A.3d 384 (2011); *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 578, 989 A.2d 606 (plaintiff's presentation of note endorsed in blank established plaintiff's standing in foreclosure action when defendant "failed to present even a scintilla of evidence demonstrating that the plaintiff was not in possession of the promissory note" at the commencement of the action), cert. denied, 295 Conn. 922, 991 A.2d 564 (2010). Therefore, the plaintiff had standing to bring this foreclosure action because the plaintiff presented unrebutted evidence that gave rise to a presumption that it was the owner of the debt at the time the action was commenced.

## II

Next, the defendants claim that the plaintiff failed to prove its prima facie case. Specifically, the defendants claim that the plaintiff failed to prove that (1) it was the owner and holder of the note and mortgage and (2) any conditions precedent to foreclosure, as established by the note and mortgage, had been satisfied. With respect to the second contention, in particular, the defendants claim that the plaintiff did not provide the defendants with notice of default, as required by the note and mortgage. We disagree with the defendants' first claim but agree with their second claim, and, accordingly, reverse.

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and the mortgage, have been satisfied." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, supra, 149

Conn. App. 392.

"In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove." (Emphasis omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 608, 717 A.2d 713 (1998). "[W]hether the plaintiff has established a prima facie case is a question of law, over which our review is plenary." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 605, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). In conducting a plenary review "we must decide whether [the court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 417, 797 A.2d 494 (2002). "We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous." (Internal quotation marks omitted.) *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d. 526 (2005).

"A finding of fact is clearly erroneous when [either] there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. Therefore, "[u]nder the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 368, 28 A.3d 272 (2011).

A

First, we address whether the plaintiff proved that it was the owner of the note.

"Being the holder of a note satisfies the plaintiff's burden of demonstrating that it is the owner of the note because under our law, the note holder is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage . . . . The possession by the bearer of a note [e]ndorsed in blank imports prima facie [evidence] that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note [endorsed in blank] establishes [the possessor's] case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights."

(Citation omitted; internal quotation marks omitted.) *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 133, 117 A.3d 500, cert. denied, 317 Conn. 915, 117 A.3d 854 (2015).

On the basis of our resolution of the claim discussed in part I of this opinion, we reject the defendants' claim that the plaintiff did not demonstrate that it was the owner of the debt because the defendants failed to present evidence to rebut the presumption that, as the holder of the note, the plaintiff owned the debt.

As we observe in part I of this opinion, the plaintiff established, through the production of the note, that it was the holder of the note. Therefore, following the reasoning of this court in *American Home Mortgage Servicing, Inc.* v. *Reilly*, supra, 157 Conn. App. 127, the plaintiff, as the note holder, also is presumed to be the owner of the debt. Further, as explained in part I of this opinion, the defendants in no way rebutted that presumption. Accordingly, we reject the defendants' assertion that the plaintiff failed to present evidence to support its prima facie case with regard to ownership of the note and mortgage.

### B

We next address the defendants' claim that the plaintiff failed to establish a prima facie case because it failed to prove that a condition precedent to foreclosure had been satisfied. The condition precedent at issue in the present action involves sections 7 and 8 of the mortgage note, which require that, upon default, the plaintiff provide the defendants with notice of default prior to acceleration.[12] In its complaint, the plaintiff alleged that it provided the defendants with written notice of default in accordance with the note and mortgage. In their answer, the defendants neither admitted nor denied that the plaintiff provided them with such notice and left the plaintiff to its proof.

The following additional facts are relevant to this portion of the defendants' claim. At trial, the plaintiff offered for admission into evidence exhibit 17, which is a default notice addressed to one of the defendants, John Mazzeo, at 36 Shady Lane, Monroe, Connecticut. The default notice was dated February 16, 2010. The last page of exhibit 17 also contained a screenshot from Bank of America's mortgaging servicing platform (screenshot). The screenshot included information regarding the loan in question, including a breach date of February 16, 2010, and an expiration date. The plaintiff offered exhibit 17 into evidence through Haberlan. Exhibit 17 was admitted over the objection of the defendants' counsel that the exhibit did not qualify under the business records exception to the rule against the admission of hearsay evidence because Haberlan could not testify that the document was made at or about the time of the date that appeared on the notice. The court

overruled the objection, stating that the exhibit had been established to be a business record of Bayview, Haberlan's employer.[13]

Following the admission into evidence of exhibit 17, Haberlan testified that the default notice in question was mailed first class mail to John Mazzeo at the subject property of 36 Shady Lane, Monroe, Connecticut. On cross-examination, however, she testified that she did not have direct knowledge of whether the notice was properly stamped and placed in a mailbox or handed over to the postal service, but, rather, that she based her assertion that the notice was mailed on the existence of the notice itself and the accompanying screenshot. She further testified, "I have no reason to believe they were not mailed out. . . . [T]hat's industry standard for any time anyone doesn't pay on anything." Haberlan also testified that she had no firsthand personal knowledge of Bank of America's process for generating notice of default letters. The following exchange then occurred between the defendants' counsel and Haberlan:

"Q. You have no personal knowledge as you sit here today of whether or not Bank of America Home Loans ever mailed [the default notice]?

"A. Other than the review of our business records.

"Q. But what in your business record would have revealed whether or not that letter ever in fact got mailed by Bank of America Home Loans?

"A. The fact that they exist. They don't create them not to mail them out."

On redirect examination, Haberlan further testified that Bayview conducts a verification process of the documents it loads into its system during the boarding process.[14] She noted that the screenshot was the way by which Bayview verified that the default notice was in fact mailed by the prior servicer, Bank of America.

Following the plaintiff's case in chief, the defendants' counsel moved for a judgment in favor of the defendants, arguing that the plaintiff failed to make out a prima facie case because a condition precedent to foreclosure, namely, notice of default prior to acceleration, had not been proven. The defendants' counsel based her argument on the fact that there was "testimony that [the default notice] was created and generated, but [the plaintiff is] missing a link regarding [Bank of America's] procedures in generating the letter to putting it in the postbox, which is the requirement under the law." The plaintiff's counsel responded that the breach date on the screenshot was proof of mailing of the default notice because "the way that you breach a loan is you issue a letter of default." The court subsequently ruled on the defendants' motion: "I'll deny the motion for judgment based on all of the evidence introduced. The plaintiff has produced sufficient evidence to make out a prima facie case including the notices to the defendants of

default. And again, that's based upon the testimony which we've heard."

This court has recognized that "[t]he right of a mortgagee to initiate a foreclosure action against a defaulting debtor depends on the mortgagee's compliance with the notice provisions contained in the mortgage." *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 368, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008); see also *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 707, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002); *Citicorp Mortgage, Inc.* v. *Porto*, 41 Conn. App. 598, 602, 677 A.2d 10 (1996). "The intent of such notice of default provisions is to inform mortgagors of their rights so that they may act to protect them." (Internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 263, 186 A.3d 708 (2018).

Here, the plain language of the mortgage note requires that notice of default be sent to the borrowers[15] prior to acceleration. See footnote 12 of this opinion. As stated previously in footnote 12 of this opinion, section 8 of the note at issue requires that notices of default be sent by first class mail. This court has previously held that "[f]irst class mail enjoys a presumption of actual delivery," meaning that when the notice is placed in the mail, delivery is presumed and the sender need not confirm actual receipt. Id., 268. Similarly, the "mailbox rule," a general principle of contract law, provides that "a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received." *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 418, 880 A.2d 882 (2005).

Therefore, in the present case, the issue is whether the court properly found that the plaintiff proved, through exhibit 17 and Haberlan's testimony, that the default notice was actually placed in the mail.

According to our Supreme Court: "That a letter was duly deposited in a mail box may be proved either by direct or circumstantial evidence. It may be proved by the testimony of the person who deposited it or by proof of facts from which it may be reasonably inferred that it was duly deposited. . . . Any other rule would ignore the realities of today's business practice." (Citation omitted.) *Kerin* v. *Udolf*, 165 Conn. 264, 268, 334 A.2d 434 (1973). In interpreting this language, however, courts have concluded that the direct or circumstantial evidence to be provided in the form of testimony are sufficient when given by a witness with personal knowledge of the mailing procedures in question. In *Kerin*, our Supreme Court held that, in an action on a promissory note, the defendant proved, through circumstantial evidence, that he had mailed an installment check prior to the default period. Id., 265, 268. Specifically, "the

defendant and [his employee] both testified that it was customary for [the defendant] to give [his employee] letters to be mailed so that [the employee] could stamp them and deposit them in the mail box. It was further testified that this customary procedure was followed [at the time the letter was allegedly mailed]." Id., 266, 268. Similarly, in *State* v. *Morelli*, 25 Conn. App. 605, 610–11, 595 A.2d 932 (1991), this court relied on circumstantial evidence in the form of witness testimony to hold that a police station had mailed to the defendant the results of a series of breath tests. In particular, a police officer employed by the Wilton Police Department that administered the tests and mailed the results testified that it was the department's "course of habit" to mail test results to the subject of the test. (Internal quotation marks omitted.) Id., 610; see also *State* v. *Dedominicis*, Superior Court, judicial district of New Britain, Docket No. MV-01-0316680 (October 21, 2002) (33 Conn. L. Rptr. 298) (circumstantial evidence from witness who testified that he supervised established practice in lab of mailing test results led court to infer that state met its burden of proving that results were mailed.)

In the present case, exhibit 17 and Haberlan's accompanying testimony did not provide sufficient facts for a trier of fact to reasonably infer that the default notice was mailed to the defendants. Haberlan, as a representative of Bayview, was not able to testify as to the particular practices used by Bank of America to generate default notices, or to mail default notices. Although she testified that she was "familiar with industry standards," she admitted that she was not familiar with the default notice practices used by Bank of America. Unlike the testifying witnesses in *Kerin* and *Morelli*, Haberlan was not able to testify that it was "customary" or the "course of habit" for Bank of America to mail default notices following the generation of such notices because she had no personal knowledge of Bank of America's specific procedures or policies. Her sole basis for claiming that the default notice was mailed to the defendants was the mere existence of the notice and accompanying screenshot, and the fact that they had been boarded into Bayview's system when Bayview became the loan subservicer. Haberlan testified that Bayview's boarding process verifies the loan documents and the alleged actions to which they refer, however, she provided the court with no pertinent details regarding the boarding process or its methods of verification. See footnote 13. She testified that the verification process sometimes consists of "system notes" and mailing "logs," however, she referred the court to no such items in this instance. Rather, she testified, in a rather circular fashion, that, in this case, the screenshot was part of the verification process for the mailing of the default notice because the screenshot contained an expiration date and breach date consistent with the date on the

default notice. Haberlan, however, admitted that she lacked personal knowledge of the policies and procedures used to generate the screenshot. Therefore, her reliance on the screenshot to prove Bayview's verification process is insufficient evidence of Bank of America having mailed the default notice to the defendants.

In applying the clearly erroneous standard of review, we find that the evidence was insufficient to support the court's determination that Bank of America had mailed the default notice to the defendants. Accordingly, because it was a condition precedent of the note that the plaintiff provide the defendants with notice of default via first class mail, the plaintiff failed to prove a prima facie foreclosure case.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] The complaint named as defendants, in addition to John Mazzeo and Linda Mazzeo, the state Department of Revenue Services and the United States Internal Revenue Service, each of which had asserted tax liens against the property. Those defendants, however, are not parties to the appeal, and references in this opinion to the defendants are to John Mazzeo and Linda Mazzeo, who are husband and wife.

[2] The defendants make four separate claims of error in their brief, which we have condensed to two claims. We have interpreted the second claim ("Did the court err in finding that the plaintiff established that it is the current owner and holder of the underlying note and that the plaintiff has been in possession of the note since prior to the commencement of the foreclosure action?"), as one challenging whether the plaintiff had standing to commence the underlying foreclosure action and whether the plaintiff established a prima facie case.

We also have combined the third claim ("Was it error for the court to allow the admission of exhibit 8, the 'routing history' of the note?"), with the claim related to standing.

Finally, we have combined the fourth claim ("Did the court err in finding that the plaintiff provided written notice of default to the defendants?"), with the claim related to whether the plaintiff established a prima facie case.

[3] The defendants asserted the following special defenses and setoffs: "(1) The plaintiff's action is barred by its violations of the provisions of [the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.] and the Dodd-Frank Wall Street Reform and Consumer Protection Act, [Pub. L. No. 111-203, 124 Stat. 1376-2223 (2010)].

"(2) The plaintiff's action is barred and/or the defendants are entitled to a setoff due to the charging of unnecessary fees and charges.

"(3) The plaintiff's action is barred in that its assignor and/or agents engaged in unfair lending practices.

"(4) The plaintiff's action is barred by unclean hands in that its predecessor disregarded underwriting standards and implemented fraud in the making of the loan and mortgage."

[4] The note was a negative amortization note, meaning that as the defendants paid off portions of the principal and interest every month, the outstanding balance due on the note increased instead of decreased.

[5] Bank of America Home Loans (Bank of America) serviced the defendants' loan prior to Bayview, and remains the master servicer for the loan. Bayview is the subservicer.

[6] A judgment ordering a foreclosure by sale is a final judgment for purposes of appeal even if the court has not set a date for the sale. *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 837–38, 779 A.2d 174 (2001).

[7] At trial, the plaintiff's counsel stated: "I have the original note, original mortgage and certified assignment of mortgage. I have shown such to opposing counsel and I've agreed with her that I'm going to be submitting copies as . . . exhibits in this matter but I wanted to give Your Honor the opportunity to review the original documents themselves." The court replied, "I've reviewed the documents. They appear to be in order."

[8] Following a voir dire of Haberlan, the defendants' counsel objected to

the admission of exhibit 7, the copy of the note. The objections of the defendants' counsel were not based on any specific evidentiary grounds. Rather, the defendants' counsel stated that "I have no objection to the introduction of the original note subject again to the plaintiff being able to tie up that they're the person entitled to enforce the note." Counsel also stated, "I'm going to object at this point because we do not know who the owner of the note is."

[9] The defendants did not raise the issue of standing at trial.

[10] Pursuant to General Statutes § 42a-1-201 (b) (27), a "[p]erson" is defined as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or any other legal or commercial entity."

[11] Moreover, there was a representation made to the trial court pursuant to *Equity One*, *Inc.* v. *Shivers*, supra, 310 Conn. 132–33, that the office of the plaintiff's counsel was in possession of the original note endorsed in blank for the benefit of its client prior to the commencement of this action. "In the absence of any fact based challenge to counsel's representation, such reliance was proper . . . because the plaintiff's counsel is an officer of the court . . . ." Id., 133. There was also testimony from Josephine Lewis, an employee of the office of the plaintiff's counsel, that the original note was received by the law firm on September 23, 2011, which was approximately one year before the case was brought.

[12] Section 7 (C) of the note, titled "Notice of Default," provides: "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means."

Further, Section 8 of the note, titled "GIVING OF NOTICES," provides: "Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me . . . . Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail . . . ."

[13] Although the default notice and accompanying mortgage servicing platform screenshot were generated by Bank of America, the plaintiff's counsel established that Haberlan's employer, Bayview, had access to these documents, as well as others, through the boarding process that occurs between a master servicer (in this case, Bank of America) and a subservicer (in this case, Bayview). The following exchange occurred between the plaintiff's counsel and Haberlan:

"Q. And when you had a circumstance when a loan is transferred from one servicer to another, does the transferring servicer have a duty to transfer a copy of a document such as this to the new servicer on or about the time of the transfer per industry custom and standard?"

"A. Yes."

Haberlan described the boarding process as follows: "Boarding is where . . . we merge and adopt the previous loan servicer's information into our system of records, which then creates one singular record. We have two main areas that are involved, which is loan setup and operations. Loan setup would handle mapping, which is where we take raw data from the previous servicer and input it into a standardized format and operations handles testing and data validation. Testing is where the loan is checked for accuracy and completeness, checks and balances along with reconciliations occur as does due diligence and if anytime during that process we find any errors or discrepancies with the loan, we place it aside for further review, reach back out to the previous servicer and if the issue cannot be rectified the loan will not be boarded. Data validation is where the final phase of testing occurs so that we can ensure the loan is validated as such and accurate. Once that is completed the loan is then boarded onto the system, given a specific Bayview Loan number and distributed amongst the different departments to be worked and then we also send out a welcome letter at that point."

[14] The following exchange occurred between the plaintiff's counsel and Haberlan:

"Q. During the boarding process Bayview's employees would look at prior loan notes, prior loan histories and items like that to verify that the actions alleged to be taken by that prior servicer were actually done, would they not?

"A. Yes."

The following additional exchange occurred between the plaintiff's counsel and Haberlan:

"Q. Please tell me your understanding about the boarding process and the verification process used in particular for default letters and other correspondence sent on a loan?

"A. So they're going to verify that the address is correct, that the borrower [is] correct, that the amounts are correct, the dates and even sometimes the language in the breach letters. If there are system notes those will be verified as well stating sometimes there [are] logs that say this was mailed out on this particular day. In this particular instance on this loan we have that screenshot that's attached to the back of the letter that says it was on this date with this expiration date with this amount due with this loan number. So that would be part of the verification process."

[15] Section 15 of the mortgage deed in question, titled "Notices," provides in relevant part: "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise."