STATE OF CONNECTICUT *v.* WILLIAM R. MORELLI
(9080)

DUPONT, C. J., SPALLONE and DALY, Js.

Argued June 7—decision released August 27, 1991

*John F. Kavanewsky, Jr.,* with whom, on the brief, was *William Pelletreau,* for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Philip D'Eramo,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from a judgment of conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. The defendant claims that the trial court improperly denied his motion to suppress the results of breath tests administered shortly after his arrest.

On September 19, 1989, Officer James Dempsey of the Wilton police department stopped the defendant for speeding. Dempsey smelled alcohol and administered a roadside sobriety test to the defendant. The test results confirmed Dempsey's suspicions, and the defendant was placed under arrest.

The defendant was transported to the Wilton police station where he consented to having his breath tested by a device known as an intoximeter. The Wilton police department's intoximeter was broken, and the defendant consented to being transported to the Weston police department where another intoximeter could be used.

The defendant was transported in a police cruiser to the Weston police department, arriving at approximately the same time Officer John Troxell of the Weston police department was performing a pretest

on the Weston intoximeter. The pretest occurred at 12:46 a.m. and, at 1:21 a.m., the defendant's breath was tested. The test revealed that the defendant's blood alcohol level was above the allowable limit set forth in General Statutes § 14-227a (a) (2). After administering the intoximeter test, Officer James Filush of the Weston police department again tested the intoximeter at 1:26 a.m. and concluded that the intoximeter readings were accurate.

Following this first intoximeter test of the defendant, Dempsey processed the necessary paperwork, during which time the defendant remained in custody. At 1:51 a.m., a second pretest was performed to check the intoximeter's accuracy. A second intoximeter test of the defendant, performed at 1:54 a.m., also showed the defendant's blood alcohol level to be above the allowable limit. After administering the second breath test, Troxell again tested the intoximeter for accuracy at 2:08 a.m. and concluded that the intoximeter readings were accurate.

Prior to trial, the defendant made an oral motion in limine that was subsequently orally amended to a motion to suppress the intoximeter test results. The defendant claims that the trial court's denial of that motion was incorrect because the state failed to demonstrate that the intoximeter device was checked for accuracy immediately before and after the tests as required by General Statutes § 14-227a (c) (4) and because a true copy of the defendant's test results was neither mailed nor personally delivered to him within twenty-four hours or by the end of the next regular business day, after such results were known, whichever was later, as required by General Statutes § 14-227a (c) (2).[1]

---

[1] General Statutes § 14-227a (c) provides in part: "[I]n any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting

The issue to be resolved is whether the results of the two intoximeter tests were obtained in compliance with the statutory requirements for ensuring that such tests are accurate.

General Statutes § 14-227a (c) sets forth six elements that must be satisfied for the admissibility of the results of chemical analysis tests of a defendant's blood, breath or urine in a criminal prosecution for violation of § 14-227a (a) or (b). The defendant's challenge relates to the second and fourth elements, which provide that chemical test results are inadmissible unless a true copy of the report is mailed or delivered to a defendant within twenty-four hours or the next business day after the results are known and the device was checked for accuracy immediately before and after such test was performed by a person certified by the department of health services.

It is uncontested that all of the other requirements of § 14-227a (c) were met by Dempsey, Filush and Troxell. The defendant argues that, in view of the penal nature of § 14-227a, the requirement that accuracy tests be performed "immediately before and after" a defendant's test must be strictly construed, and that the thirty-five minute delay between the first pretest of the intoximeter and the first test of the defendant does not satisfy the statute. In addition, the defendant argues that the state failed to provide sufficient evidence at the suppression hearing to support its bur-

the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided . . . (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later . . . (4) the device used for such test was checked for accuracy immediately before and after such test was performed by a person certified by the department of health services . . . ."

den of proving that the test results were mailed to the defendant within twenty-four hours of the results being known.

The state concedes that there was a thirty-five minute delay between the first pretest of the intoximeter and the actual test of the defendant's breath, but it contends that this delay was not unreasonable and that there was compliance with the statutory word "immediately."

It is a fundamental principle of construction that a statute such as § 14-227a, which imposes criminal liability, is to be strictly construed. *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983). The rule of strict construction, however, does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. Id. Common sense should be applied to the language of a penal statute, particularly if otherwise absurdity or frustration of the evident design of the legislature results. *State* v. *Waterman,* 7 Conn. App. 326, 334, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

It is evident from the language of § 14-227a that the purpose of testing the intoximeter for accuracy is to ensure that the device reliably reflects the actual blood alcohol level of the subject tested. *State* v. *Smith,* 16 Conn. App. 156, 162, 547 A.2d 69, cert. denied, 209 Conn. 820, 551 A.2d 758 (1988). The legislature has, therefore, required that tests be performed immediately before and after the subject's test in order to ensure the accuracy of the machine.

"Immediately" has been defined to mean that "the act shall be performed, not instantly, but without unreasonable delay having regard to the thing to be done." *O'Brien* v. *Wise & Upson Co.,* 108 Conn. 309, 312, 143

A. 155 (1928); *State* v. *Anonymous,* 32 Conn. Sup. 611, 613, 349 A.2d 146 (1975); see also *Bailey* v. *Bruneau's Truck Service, Inc.,* 149 Conn. 46, 546, 175 A.2d 372 (1961). Whether there has been an unreasonable delay is a question of fact for the trial court. On appeal, the function of this court is limited to determining whether the decision of the trial court is clearly erroneous. Practice Book § 4061; *State* v. *Jones,* 193 Conn. 70, 79–80, 475 A.2d 1087 (1984).

In denying the defendant's motion to suppress, the trial court relied on the definition of "immediate" provided by *O'Brien* and *Anonymous* and held that there was a question of fact regarding whether the thirty-five minute delay was unreasonable. It held, on the basis of testimony from the police officers and from an expert from the state toxicology laboratory, that the delay was not unreasonable and would not have adversely affected the intoximeter's accuracy.

There was ample evidence to support the denial of the suppression motion. The delay of thirty-five minutes was not per se unreasonable and in this instance there was no evidence that the accuracy of the machine was affected in any way during the time period between the pretest and the test.

The defendant also asserts that the state failed to meet its burden of proving that the test results were mailed to him within twenty-four hours of their being known. In the course of the suppression hearing, Dempsey testified that it was not the Wilton police department's policy to give subjects a copy of the results right after the test. Rather its "course of habit" was to mail the test results to the subject. The trial court, relying on *Kerin* v. *Udolf,* 165 Conn. 264, 268, 334 A.2d 434 (1973), which holds that circumstantial evidence may be used to infer reasonably that something was duly

mailed, found that the state had sustained its burden of showing that the test results had been duly mailed to the defendant during the period specified by statute.

Our review of this finding of fact indicates that the trial court could have reasonably concluded as it did.[2] *State* v. *Rutledge,* 17 Conn. App. 250, 256, 552 A.2d 435 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] After making its finding, the trial court allowed the state to present additional evidence concerning the mailing of the test results. Because the court had already ruled on the matter, and because we conclude that the ruling was logical and reasonable, the defendant's claim of impropriety as to the introduction of such evidence need not be discussed.