[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO SUPPRESS
Defendant, Richard Herteux, has moved to suppress the CT Page 10236 breathalizer test results taken from the Meriden Police Department's (MPD) Intoximeter 3000, Serial Number 5278 (Intoximeter), at 2:21 a.m. and 2:56 a.m. on December 18, 1993. Defendant claims the Intoximeter was unreliable and inaccurate and had been improperly repaired or recalibrated without reexamination or recertification by the Connecticut Department of Public Health Services (DOH).
At a hearing lasting several hours, held during a portion of two separate court days, both defendant and the state elicited testimony from MPD Officers Sullivan (the testing officer and a certified Intoximeter instructor), Cardona (a record keeper for the Intoximeter) and Topulos (the MPD training officer). All are certified to use the Intoximeter. Defendant Mr. Herteux testified as to the events of his afternoon and night, including the tests at issue. Each party submitted four exhibits (Defendant's 1-4 and State's A-D). Both counsel waived briefs in favor of oral argument.
By his own admission, defendant consumed three draft beers at a bar after work on Friday, December 17, followed by dinner with a fourth beer, an interval for holiday decorating and a visit with friends at the Days Inn, where he consumed two mixed drinks containing Jack Daniels whiskey. After leaving the Days Inn, he was stopped after driving through a yellow light. At that time, the officer smelling alcohol on Mr. Herteux' breath, he was subjected to standard field tests on which he was less than successful.[1] Following the field test, defendant was arrested at 1:20 a.m. and transported to the MPD, where defendant's intoximeter results were .152 at 2:21 a.m. and .139 at 2:56 a.m.
Some of the defendant's specific challenges to the reliability of Mr. Herteux' test results do not involve the six statutory prerequisites set forth in General Statutes § 14-227a(c). To the extent they involve issues extraneous to those criteria, the state is entitled to a rebuttable presumption that the tests do establish defendant's blood alcohol content[2]
under the clear language of the statute, as amended in 1993.
To the extent the defendant's claims involve § 14-227a(c)(3) or (4), the court has placed the burden of proof upon the state. See State v. Morelli, 25 Conn. App. 605 (1991). The statutory criteria of § 14-227a(b) are conditions precedent which must be met before the test results are competent and admissible evidence. State v. Anonymous, 34 Conn. Sup. 679, 683-4
CT Page 10237 (1978). Defendant, by the language of his motion and the evidence, has not called into question criteria (c)(1, 2, 5 and 6).
For discussion purposes, the claims of defendant as to the machine, and the evidence, are divided into two groups: the prior use, maintenance, service and calibration of the machine, and the use of the machine on the night of December 18, 1993.
Part A
Defendant makes several attacks upon the accuracy of the test results of December 18, 1993 based upon events related to the Intoximeter prior to the night of defendant's tests. The machine was serviced by DOH six times in 1991 and 1992. It is clear that the machine was last certified by the DOH on December 23, 1992, about one year prior to Mr. Herteux' December 18, 1993 tests. State regulation section 14-227a-10(b)(2)(B) does not require recertification absent repair or recalibration. There is no evidence of such repair or recalibration between December 1992 and December 1993. The MPD log book shows servicing of the Intoximeter in 1991, 1992 and 1994, although Officer Cardona admits such records were imperfectly kept. The DOH record, supplied to defense counsel in early 1994 by DOH, shows servicing in 1991 and 1992 (including the certification and calibration of December 1992) and no 1993 servicing. Officer Sullivan testified that each time the machine was sent to DOH, it was recalibrated and recertified.
While defendant raises the possibility a repair by modem may have occurred between December of 1992 and December of 1993, there is no evidence of such, Officer Sullivan not remembering any in that interval, Officer Topulos remembering only 1994 servicing by modem and Officer Cardona indicating no modem service records are kept.[3] The use of the modem for one or more of three purposes to connect the machine to DOH did occur at a point undefined in time.[4]
Defendant demonstrates that the intoximeter did not operate within the conventional parameters on three occasions between December 1992 and December 1993. However, none is close in time to the defendant's test dates, and the evidence does not establish this resulted from any defect in the machine, given Officer Topulos' testimony that room temperature can result in a low abort reading (cold room) or high abort reading (a hot room). CT Page 10238 Significantly, neither the statute nor regulation requires a repair or recalibration as a result of an aborted reading. The external standards test before and after each of Mr. Herteux' tests were within the variance parameters of .95 to .105 which are used to determine if the machine is operating properly.
Part B
Defendant makes several challenges to the accuracy and reliability of the intoximeter based upon the events of the night of December 18. The box in Exhibit 1 to be checked if the machine was certified, operator certified and machine checked for accuracy was not checked. The court finds, based on the testimony of the four witnesses and Exhibits 1-4, that the machine was certified, operator Officer Sullivan certified, the machine properly checked before and after each test as required by statute and regulation[5], and the test conducted according to approved methods.
The external standard tests before and after defendant's tests were within the allowable variance of .95 to .105, and demonstrated the machine was working properly at the time of Mr. Herteux' tests, which is the strongest evidence of his tests' accuracy.
Mr. Herteux recalls as many as ten times when the intoximeter failed to register within the external standard range prior to his taking his tests. Officer Sullivan cannot remember the test for Mr. Herteux except as recorded on Exhibit 1. However, Mr. Herteux' time estimates in his testimony exceed the actual time elapsed from his arrest to first test by a significant amount and the amount of liquor consumed by him that evening, and the late hour combined with the lack of any aborted test records for Mr. Herteux (in contrast to exhibits A-C showing other individuals' aborted test results) make it difficult for the court to fully credit his testimony, however sincere. Further, Officer Topulos' uncontroverted testimony indicates that once the external standard parameters are met, accurate results will be obtained. The external standards were met for Mr. Herteux' tests.
Based upon the evidence and exhibits, the court finds that General Statutes § 227a(c) (3 and 4) have been met, the Intoximeter was reliable and accurate and properly certified at the time of Mr. Herteux' tests, and the motion to suppress is accordingly denied. CT Page 10239
James T. Graham Judge of the Superior Court