******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## PENNYMAC CORP. *v.* JOSEPH TARZIA ET AL.
### (AC 44378)

Prescott, Alexander and Suarez, Js.

*Syllabus*

The plaintiff, P Co., sought to foreclose a mortgage on certain real property owned by the defendant T. P Co., as holder of the note and mortgage at the time of the commencement of the action, sent a letter to T by certified mail return receipt requested, notifying him that the loan was in default and, pursuant to statute (§ 8-265ee (a)), provided him with the specific notice required to be given prior to its commencement of a foreclosure of a qualifying mortgage under the Emergency Mortgage Assistance Program (EMAP). Thereafter, P Co. assigned the note and mortgage to W Co., and W Co. was substituted as the plaintiff. Subsequently, the trial court rendered judgment of strict foreclosure, and set law days. T filed a motion to open on the last extended law day, claiming that the judgment needed to be opened so that he may pursue a motion to dismiss the action for P Co.'s failure to comply with the notice provision of § 8-265ee (a). Specifically, T claimed that P Co. never sent the EMAP notice and, in support of that contention, provided the affidavit of a consultant who previously worked in the United States Postal Service (USPS). The consultant claimed in a report that, although P Co. created a certified mail label, the EMAP notice was never actually placed in the mail system, as revealed by a tracking query he produced from the USPS website. Subsequently, the trial court denied T's motion. On appeal, T claimed, inter alia, that the trial court incorrectly determined that it had subject matter jurisdiction over the foreclosure action on the ground that P Co. provided T with the required EMAP notice. *Held* that the trial court correctly determined that it had subject matter jurisdiction over the present foreclosure action and that the court's factual findings that P Co. complied with the EMAP notice requirement under § 8-265ee (a) were not clearly erroneous, as W Co.'s evidence amply supported the trial court's factual finding that P Co. provided the required EMAP notice to T: W Co. provided the court with an affidavit by its counsel certifying that P Co. had mailed T the EMAP notice and, in support thereof, attached a photocopy of an envelope addressed by its counsel to T, which included the certified mail barcode and corresponding certified mail numbers, as well as the physical receipt provided by the USPS to P Co.'s counsel, and the lack of evidence of a return receipt postcard corresponding to the EMAP notice was inconsequential, as lack of receipt did not affect proof of EMAP compliance; moreover, T's contention that the trial court failed to give proper weight to his evidentiary submissions was unavailing because, despite an isolated statement by the trial court regarding the late and protracted state of the proceedings, the court explicitly stated that it had carefully reviewed and considered the motion, the related filings and exhibits attached thereto, and that it had weighed both parties' evidence before ultimately finding that T's submissions failed to refute W Co.'s evidence; furthermore, the trial court was free to discredit or find unpersuasive T's evidence, and this court declined to reweigh the evidence in T's favor on appeal.

Argued December 9, 2021—officially released September 13, 2022

*Procedural History*

Action to foreclose a mortgage on certain of the named defendant's real property, brought to the Superior Court in the judicial district of Stamford-Norwalk, where Wilmington Trust National Association as Trustee for MRFA Trust 2015-1 was substituted as the plaintiff; thereafter, the court, *Hon. William A. Mottolese*, judge trial referee, granted the plaintiff's motion for judgment of strict foreclosure and rendered judg-

ment thereon; subsequently, the court, *Kavanewsky, J.*, denied the named defendant's motion to open the judgment, and the named defendant appealed to this court. *Affirmed.*

*Alexander H. Schwartz*, for the appellant (named defendant).

*Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

*Opinion*

ALEXANDER, J. The defendant Joseph Tarzia appeals from the trial court's denial of his motion to open the judgment of strict foreclosure rendered in favor of the substitute plaintiff, Wilmington Trust National Association as Trustee for MFRA Trust 2015-1.[1] On appeal, the defendant claims that the court incorrectly determined that it had subject matter jurisdiction over this foreclosure action on the ground that the original plaintiff, Pennymac Corp. (Pennymac), complied with General Statutes § 8-265ee (a), the notice provision of the Emergency Mortgage Assistance Program (EMAP), General Statutes § 8-265cc et seq. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On May 31, 2017, Pennymac commenced this foreclosure action against the defendant. According to the complaint, on December 15, 2006, the defendant executed a promissory note in the amount of $1 million payable to the order of Washington Mutual Bank, FA, and secured by a mortgage on the property located at 70 Cranberry Road in Norwalk and Westport (property). The mortgage and the note eventually were assigned to Pennymac before it commenced this action.

On July 31, 2017, Pennymac filed an affidavit certifying that it had provided the defendant with the notice required by the EMAP.[2] In the affidavit, a paralegal employed by the plaintiff's counsel[3] averred that, "based on [the] business records [of the plaintiff's counsel] and its regular business practices, [Pennymac] has complied with the [EMAP] by [the plaintiff's counsel] giving on April 19, 2016 to all mortgagors a notice containing the information required by said statute." Attached to the affidavit is a photocopy of an envelope addressed from the plaintiff's counsel to the defendant, depicting the certified mail barcode and corresponding certified mail number. Also attached to the affidavit is a letter, dated April 19, 2016, from the plaintiff's counsel to the defendant providing him, among other things, notice pursuant to the EMAP.

In April, 2018, Pennymac assigned the note and the mortgage to the plaintiff. On May 29, 2018, Pennymac filed a motion to substitute the plaintiff as the party plaintiff, which the court granted on June 18, 2018. On June 11, 2019, the plaintiff filed a motion for judgment of strict foreclosure. On January 13, 2020, the court rendered a judgment of strict foreclosure and set law days to commence on April 14, 2020. The court then issued a series of five orders opening the judgment of strict foreclosure and extending the commencement of law days until June 2, 2020, July 7, 2020, August 4, 2020, September 9, 2020, and finally to October 6, 2020. The

defendant did not appeal from the January 13, 2020 judgment of strict foreclosure or any of the subsequent orders extending the law days.

On the October 6, 2020 law day, the defendant filed a motion to open the judgment of strict foreclosure. In his motion, the defendant asserted that the judgment of strict foreclosure must be opened "in order to permit him to pursue a motion to dismiss this action for [the] plaintiff's failure to comply with the [EMAP]." The defendant contemporaneously filed with his motion to open: (1) an October 6, 2020 affidavit by the defendant's counsel, Alexander H. Schwartz; and (2) an unsigned, unsworn report (report) authored by Peter Wade, a senior consultant for U.S. Postal Mail Fraud Investigations at Humatec, which is an expert witness consulting firm.

In his affidavit, the defendant's counsel avers that, on July 20, 2020, he retained Wade to provide an opinion as to whether the certified letter "prepared by" the plaintiff's counsel containing the EMAP notice "was delivered" to the defendant. The defendant's counsel describes Wade's qualifications as an individual with "decades of experience with the U.S. Postal Service [(USPS)] and Postal Inspection Service," with a specialization "in postal inspection polices and investigative methods and techniques." The defendant's counsel states that Wade previously served as the Assistant Regional Chief Postal Inspector for the Northeast Region, and Postmaster for the U.S. Virgin Islands and Puerto Rico. The defendant's counsel concluded his affidavit by stating that he received Wade's report on October 5, 2020, and that "a true copy of [the report] is attached hereto."

In the report, Wade opines that the certified mail letter from the plaintiff's counsel to the defendant containing the EMAP notice "has never been placed in the U.S. mail." To support this opinion, Wade states that "the USPS keeps track of the progress of certified mail from its initial induction at a mail processing center through to the final disposition of that letter." Wade then states that on October 4, 2020, he performed a tracking query on the USPS website for the certified mail number depicted on the envelope that the plaintiff's counsel attached to its July 31, 2017 affidavit of EMAP compliance. Wade states that this query revealed that the plaintiff's counsel had "created" a certified mail label, however, the certified mail letter "*was not yet in the system.*" (Emphasis in original.) Wade attached to his report a printout of the USPS website that reveals the result of his tracking query. This printout provides in relevant part: "[l]abel [c]reated, not yet in system" and that "[a] status update is not yet available on your package. It will be available when the shipper provides an update or the package is delivered to USPS."[4]

On October 8, 2020, the plaintiff filed an objection

to the defendant's motion to open. Therein, the plaintiff contended that the July 31, 2017 affidavit of EMAP compliance established that the EMAP notice was provided to the defendant. The plaintiff argued that the EMAP compliance affidavit was filed on the docket three years ago and previously was uncontested by the defendant. The plaintiff also explained that the USPS provided the plaintiff's counsel with a receipt when it physically deposited the certified mail containing the EMAP notice with the USPS. The plaintiff attached this USPS receipt to its objection, which shows that, on April 19, 2016, the plaintiff's counsel deposited with the Farmington branch of the USPS a letter addressed to the defendant by certified mail return receipt requested. Each page of the USPS receipt is marked with a dated stamp from the Farmington branch of the USPS. The plaintiff finally argued that Wade's report is flawed because he could not have obtained tracking information for a certified mail letter sent more than four years prior to the creation of his report because the USPS online tracking system only retains records for two years. The plaintiff attached a printout from the USPS website evincing its data retention policy. On October 16, 2020, the plaintiff filed an amended objection to the defendant's motion to open, arguing that the motion was moot because title vested with the plaintiff after the October 6, 2020 law day passed.

On October 26, 2020, the defendant filed a reply memorandum in further support of his motion to open, to which he attached an October 20, 2020 affidavit by Wade. The defendant's reply reiterates the conclusions of Wade's affidavit in which he opines, without citation, that "[i]t is true that the [USPS] retains records of certified mail delivery for two years. However, the two year period of time commences from the end of the month in which that certified item was delivered to the addressee. Had this certified letter which was prepared for mailing on April 19, 2016, been delivered on or before September 20, 2018, there would be no record of that article in the [USPS] tracking system today. The fact that the data is available demonstrates that the item was not delivered." (Emphasis omitted.) The defendant further argued that his motion to open was not moot because he filed his motion to open on the law day, which imposed an automatic appellate stay tolling the law days until the expiration of the applicable appeal period.[5]

On October 29, 2020, the court, without holding a hearing, issued an order denying the defendant's motion to open. The court stated at the outset that it had "carefully reviewed and considered" the motion to open, the related filings, and all the exhibits attached thereto. The court determined that the motion to open was not moot because it was filed timely. The court then found that the plaintiff's evidence established that Pennymac provided the defendant with the EMAP notice. The court

reasoned that "the plaintiff has shown in its own affidavit that it did send the required notice to the defendant, properly addressed, in the manner prescribed by the [EMAP]. It has provided a USPS receipt to that effect. . . . Further, the defendant has not provided sufficient cause to [establish] that the notice was [not] mailed. The defendant's claim in the affidavits he has provided, that the notice never entered the USPS 'mail stream,' does not necessarily refute the evidence that the plaintiff did what the [EMAP] requires. And finally, the court gives little weight to the defendant's claims, especially given the context of the late and protracted stage of these proceedings." (Citation omitted.) This appeal followed.

On appeal, the defendant claims that the court incorrectly determined that it had subject matter jurisdiction over this foreclosure action on the ground that Pennymac provided the defendant with the required EMAP notice.[6] The defendant narrowly argues that the court improperly credited the plaintiff's evidence and discredited Wade's expert "opinion" not because "it was outweighed by other, more weighty evidence, but because of *when* during the course of litigation [the] defendant offered it." (Emphasis added.) The plaintiff responds that the court properly denied the defendant's motion to open on the basis of the plaintiff's evidence, which established that Pennymac had complied with the EMAP notice requirement.[7]

We first set forth the standard of review and legal principles relevant to our resolution of this appeal. The sole dispositive issue in this appeal is whether the court properly determined that it had subject matter jurisdiction because Pennymac had complied with the EMAP notice requirement, which is a mixed question of law and fact.[8] We exercise plenary review over the court's ultimate legal determination as to whether it had subject matter jurisdiction because that is a question of law. See *Caverly* v. *State*, 342 Conn. 226, 233, 269 A.3d 94 (2022) (determination as to trial court's subject matter jurisdiction is question of law). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citation omitted; internal quotation marks omitted.) *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 382, 222 A.3d 950 (2020). Conversely, the court's factual finding that Pennymac provided the EMAP notice to the defendant is subject to the clearly erroneous standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Myrtle Mews Assn., Inc.* v. *Bordes*, 125 Conn. App. 12, 15, 6 A.3d 163 (2010); id. (using mixed standard of review to question of whether service conferred personal jurisdiction over defendant); see also *Deutsche Bank National Trust Co.* v. *McKeith*, 156 Conn. App. 36, 40, 111 A.3d 545 (2015) (same).

The EMAP notice requirement is contained in § 8-265ee (a), which provides in relevant part: "On and after July 1, 2008, a mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff, shall give notice to . . . [the] mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. Such notice shall advise the [mortgagor] of his delinquency or other default under the mortgage and shall state that the [mortgagor] has sixty days from the date of such notice in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the [Connecticut Housing Finance Authority] with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the mortgagor and mortgagee are unable to resolve the delinquency or default."[9] General Statutes (Supp. 2022) § 8-265ee (a).

This court has held that a mortgagee's failure to comply with the EMAP notice requirement deprives a court of subject matter jurisdiction. This court recently held, as a matter of first impression, that "a mortgagee that wishes to commence a foreclosure of an applicable mortgage must provide the prescribed EMAP notice in accordance with § 8-265ee (a) prior to the commencement of a foreclosure action, and the failure to do so deprives the trial court of subject matter jurisdiction." *MTGLQ Investors, L.P.* v. *Hammons*, 196 Conn. App. 636, 646, 230 A.3d 882, cert. denied, 335 Conn. 950, 238 A.3d 21 (2020). Applying this rule, this court in *Hammons* concluded that, although "a previous mortgagee . . . through its loan servicer, had mailed an EMAP notice to the defendant prior to the commencement of a separate foreclosure action that was subsequently dismissed," there was "no dispute that the plaintiff—as the original plaintiff in the present action—did not mail the defendant an EMAP notice as required by § 8-265ee (a)." Id., 645; see also *KeyBank, N.A.* v. *Yazar*, 206 Conn. App. 625, 634, 261 A.3d 9 (applying *Hammons* to conclude that court lacked subject matter jurisdiction because original plaintiff "did not mail the defen-

dant an EMAP notice in connection with the present action"), cert. granted, 340 Conn. 901, 263 A.3d 100 (2021).[10] Accordingly, for the court to have subject matter jurisdiction, Pennymac must have provided the required EMAP notice to the defendant by mail prior to the commencement of the present action.

Moreover, the EMAP "does not require a return receipt" for the provision of the required notice to a mortgagor, and "the lack of a return receipt in the record does not affect [a mortgagee's] compliance with the [EMAP]." *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 279, 186 A.3d 708 (2018). Consequently, we are guided by the general principles regarding the proof required to establish that a letter was actually placed in the mail. Id., 269–71 (noting that distinction between first class mail and certified mail return receipt is manner of delivery). Whether a letter actually was placed in the mail "may be proved either by direct or circumstantial evidence. It may be proved by the testimony of the person who deposited it or by proof of facts from which it may be reasonably inferred that it was duly deposited. . . . Any other rule would ignore the realities of today's business practice." (Internal quotation marks omitted.) *Bank of New York Mellon* v. *Mazzeo*, 195 Conn. App. 357, 376, 225 A.3d 290 (2020).

In the present case, although both parties presented conflicting evidence as to whether Pennymac provided the required EMAP notice to the defendant,[11] we conclude that the plaintiff's evidence amply supports the court's factual finding that Pennymac provided the required EMAP notice to the defendant. Particularly, the plaintiff provided the court with the July 31, 2017 affidavit by the plaintiff's counsel certifying that "based on [the] business records [of the plaintiff's counsel] and its regular business practices," it had mailed the defendant the EMAP notice on April 19, 2016.[12] In support, the plaintiff's counsel attached a photocopy of an envelope addressed by the plaintiff's counsel to the defendant, which includes the certified mail barcode and corresponding certified mail numbers. In its objection to the defendant's motion to open, the plaintiff submitted the physical receipt that the Farmington branch of the USPS provided the plaintiff's counsel when it physically deposited the EMAP notice with the USPS. The USPS receipt shows that, on April 19, 2016, the plaintiff's counsel deposited with the Farmington branch of the USPS the subject letter to the defendant by certified mail return receipt requested, and the receipt is date stamped by the Farmington branch of the USPS. The fact that the plaintiff did not present evidence of the return receipt corresponding to the EMAP notice is inconsequential. See, e.g., *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 279 (lack of return receipt "does not affect" proof of EMAP compliance). Accordingly, the plaintiff's evidence supports the court's finding that Pennymac provided the

defendant with the required EMAP notice.

The defendant spends a majority of his appellate brief challenging the final sentence of the court's decision that it gave "little weight" to the defendant's submissions "given the context of the late and protracted state of these proceedings." We reject the defendant's contention. Despite the court's isolated statement as to the protracted state of the proceedings, its analysis of the issues before it reflects that the court did, in fact, base its decision on a careful review of the evidence and the applicable law. The court explicitly stated at the outset of its decision that it had "carefully reviewed and considered" the motion to open, the related filings, and all the exhibits attached thereto. The court later stated that it had "carefully reviewed all of the filings that bear on" Pennymac's compliance with the EMAP notice requirement. The court weighed both parties' evidence and ultimately found that the defendant's submissions failed to refute the plaintiff's evidence, which established that the EMAP notice requirement had been satisfied. The court was free to discredit or find unpersuasive the defendant's evidence, and we decline the defendant's invitation to reweigh the evidence in his favor on appeal.[13] See, e.g., *Deutsche Bank National Trust Co.* v. *McKeith*, supra, 156 Conn. App. 43 (trial court properly credited marshal's return and discredited affidavit in resolving jurisdictional question); *Sakon* v. *Glastonbury*, 111 Conn. App. 242, 254–55, 958 A.2d 801 (2008) (declining to reweigh evidence on appeal), cert. denied, 290 Conn. 916, 965 A.2d 554 (2009). Thus, there is no basis on which to conclude that the court summarily denied the defendant's motion to open solely because of *when* it was filed.

In light of the foregoing, we conclude that the court correctly determined that it had subject matter jurisdiction over this action and that the court's factual finding that Pennymac complied with the EMAP notice requirement was not clearly erroneous because it was supported by the plaintiff's evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The original plaintiff, Pennymac Corp., commenced this action against the following defendants: Joseph Tarzia; Webster Bank, N.A.; Capital One Bank (USA), N.A.; and Carmine Aquino. We refer to Joseph Tarzia as the defendant because he is the only defendant relevant to this appeal.

On May 29, 2018, Pennymac Corp. filed a motion to substitute Wilmington Trust National Association as Trustee for MFRA Trust 2015-1 as the plaintiff on the ground that it had acquired the right to collect the debt alleged in the complaint. On June 18, 2018, the court granted the motion to substitute. Consequently, we refer to Pennymac Corp. by name and to Wilmington Trust National Association as Trustee for MFRA Trust 2015-1 as the plaintiff.

[2] As subsequently outlined in this opinion, the notice provision of the EMAP, § 8-265ee (a), requires in certain cases that a mortgagee, prior to its commencement of a foreclosure action, "give notice to . . . [the] mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage." This EMAP notice "shall advise the [mortgagor] of his delinquency or other default under the mortgage and shall state that the [mortgagor] has sixty days from the date of such notice

in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the [Connecticut Housing Finance Authority] with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the [mortgagor] and mortgagee are unable to resolve the delinquency or default." General Statutes (Supp. 2022) § 8-265ee (a).

We note that, although the legislature has amended § 8-265ee (a) since the events underlying this appeal; see Public Acts 2021, No. 21-44; those amendments have no bearing on the merits of this appeal. All references herein to § 8-265ee are to the version appearing in the 2022 supplement to the General Statutes.

[3] Both Pennymac and the plaintiff were represented by the same law firm, Bendett & McHugh, P.C. For clarity, we refer to Bendett & McHugh, P.C., as the plaintiff's counsel.

[4] Wade also states in his report that, on October 3, 2020, he personally sent an exemplary certified mail letter to the plaintiff's counsel using Stamps.com software, which a USPS tracking query reveals was in "preshipment." Wade further attaches to his report a random USPS tracking query for a certified mail letter that was delivered. Wade contends that, because the result of all three of these USPS tracking queries are different, the plaintiff's counsel never mailed the EMAP notice to the defendant.

[5] The defendant does not renew this argument on appeal, however, we note that, once the time to appeal from the initial foreclosure judgment has expired, the mere filing of a motion to open does not impose an automatic appellate stay to toll the law day. See, e.g., *Deutsche Bank National Trust Co.* v. *Pardo*, 170 Conn. App. 642, 652–53, 155 A.3d 764 (motion to open challenging court's jurisdiction filed *prior* to passage of law day, but heard and decided *after* law day, does not trigger automatic stay that tolls running of law days), cert. denied, 325 Conn. 912, 159 A.3d 231 (2017).

[6] The defendant states in his principal appellate brief that his "challenge [is] not that he did not receive the EMAP notice. He claimed and proved that [Pennymac] never sent the notice to him in the first place," and that he "does not claim that the [court] misconstrued the law . . . and thereby committed a clear error of law." In light of the unique arguments and facts presented by this appeal, we confine our decision to the precise issue presented. See footnotes 5, 7, 8, 9, and 11 of this opinion.

[7] The plaintiff advances two additional arguments that require little discussion. First, the plaintiff argues that this appeal is moot because title to the property absolutely vested in the plaintiff as a result of the passage of the October 6, 2020 law day and, thus, there is no practical relief that can be granted to the defendant on appeal. An appeal in a foreclosure action ordinarily is moot after the passage of the law day because title is absolute in the encumbrancer. See *Wachovia Mortgage, FSB* v. *Toczek*, 189 Conn. App. 812, 818–20, 209 A.3d 725, cert. denied, 333 Conn. 914, 216 A.3d 650 (2019). One rare exception to this general rule is an appeal from a motion to open that challenges whether "the court lacked jurisdiction over either the person or the case at the time the judgment of strict foreclosure was entered." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *McKeith*, 156 Conn. App. 36, 41, 111 A.3d 545 (2015); see also *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 377–80, 260 A.3d 1187 (2021) (outlining "rare and exceptional cases" in which courts may "exercise a limited form of continuing jurisdiction over motions to open judgments of strict foreclosure after the passage of the law days"); *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 576, 953 A.2d 868 (2008) (The trial court's lack of jurisdiction is a proper ground to open the foreclosure judgment after the passage of law days because "[n]o principle is more universal than that the judgment of a court without jurisdiction is a nullity. . . . Such a judgment, whenever and wherever declared upon as a source of a right, may always be challenged." (Internal quotation marks omitted.)). Therefore, this appeal is not moot due to the passage of the law day because, even though the plaintiff has title to the property, the defendant's motion to open challenged the court's subject matter jurisdiction.

Second, the plaintiff argues that the defendant's appeal constitutes an impermissible collateral attack on the judgment of strict foreclosure, from which the defendant did not appeal. See *Bank of New York Mellon* v. *Tope*, 202 Conn. App. 540, 549–50, 246 A.3d 4 (appeal from court's denial of motion to open challenging court's subject matter jurisdiction to render judgment

of strict foreclosure constituted impermissible collateral attack because defendant failed to establish that "the trial court's lack of subject matter jurisdiction is entirely obvious"), cert. granted, 336 Conn. 950, 251 A.3d 618 (2021), and cert. granted, 339 Conn. 901, 260 A.3d 483 (2021). In light of our conclusion that the court properly denied the defendant's motion to open, we need not reach the plaintiff's alternative collateral attack argument. See, e.g., *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 87 n.11, 214 A.3d 345 (2019) (declining to reach alternative argument).

[8] Both parties on appeal assert that we should apply an abuse of discretion review because this is an appeal from the denial of a motion to open. Although both parties are correct that we ordinarily review a court's ruling on a motion to open a judgment for an abuse of discretion; see *Conroy* v. *Idlibi*, 343 Conn. 201, 204, 272 A.3d 1121 (2022); the dispositive issue in this appeal is not whether the trial court properly exercised its discretion in denying the motion to open but, rather, whether the trial court properly determined that it had subject matter jurisdiction under the circumstances of this case. See *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 166, 75 A.3d 651 (2013) (exercising plenary review in appeal from motion to open challenging court's subject matter jurisdiction). The issue of subject matter jurisdiction is not a matter of discretion. Id.

[9] There is no dispute on appeal that Pennymac was required to comply with the provisions of § 8-265ee prior to commencing this foreclosure action. See, e.g., *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 290, 145 A.3d 408 ("the obligation to give notice pursuant to § 8-265ee before commencing a foreclosure action applies only if the plaintiff is seeking to foreclose a mortgage that satisfies certain standards enumerated in [General Statutes] § 8-265ff (e)"), cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

[10] Our Supreme Court granted the plaintiff's petition for certification to appeal from this court's judgment in *Yazar* as to two issues: (1) "Did the Appellate Court correctly conclude that a mortgagee's failure to comply with the . . . [EMAP] notice requirements set forth in . . . § 8-265ee (a) deprives the trial court of subject matter jurisdiction over the mortgagee's foreclosure action?" And (2) "[d]id the Appellate Court correctly conclude that an EMAP notice that had been sent by a mortgagee to a mortgagor prior to a first foreclosure action, which was later dismissed, did not satisfy the notice requirements of § 8-265ee (a) in connection with a second foreclosure action subsequently commenced against the mortgagor based on the same default under the same mortgage?" (Internal quotation marks omitted.) *KeyBank, N.A.* v. *Yazar*, 340 Conn. 901, 901, 263 A.3d 100 (2021). Nevertheless, "there is no reason to conclude that a granting of certification by our Supreme Court necessarily signifies disapproval of the decision from which certification to appeal was granted. There is no authority to support the proposition that a grant of certification by our Supreme Court immediately invalidates or overrules this court's decision; a grant of certification stays further proceedings and subjects this court's decision to further review. In such circumstances, prior to a final determination of the cause by our Supreme Court, a decision of this court is binding precedent on this court." (Emphasis omitted; internal quotation marks omitted.) *Ortiz* v. *Commissioner of Correction*, 211 Conn. App. 378, 386 n.4, 272 A.3d 692 (2022).

[11] We note that "where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Internal quotation marks omitted.) *Giannoni* v. *Commissioner of Transportation*, 322 Conn. 344, 350, 141 A.3d 784 (2016). Here, assuming without deciding that the parties' conflicting submissions created a critical factual dispute, the court's failure to hold an evidentiary hearing to resolve this dispute is beyond the scope of this appeal for two reasons.

First, neither party requested that the court hold a hearing to resolve any critical factual jurisdictional dispute, either prior to or after the court's decision denying the defendant's motion to open. This court has held that it is a party's burden to request an evidentiary hearing to resolve a critical jurisdictional factual dispute and, in the absence of such a request, a trial court properly can resolve a critical jurisdictional factual dispute without holding an evidentiary hearing. See, e.g., *Priore* v. *Haig*, 196 Conn. App. 675, 687, 230 A.3d 714 (trial court properly determined critical jurisdictional factual dispute without hearing because, inter alia, plaintiff failed to request evidentiary hearing until after court ruled on motion to dismiss), rev'd on other grounds, 344 Conn. 636,      A.3d      (2022); *Walshon* v. *Ballon Stoll*

*Bader & Nadler*, *P.C.*, 121 Conn. App. 366, 371, 996 A.2d 1195 (2010) (trial court properly decided critical factual dispute on basis of parties' pleadings and affidavits because, inter alia, plaintiff did not request evidentiary hearing). Thus, we decline to reverse the judgment of the trial court on a ground that was not raised before it. See *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 58, 225 A.3d 953 (2020) ("[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.)).

Second, the defendant does not claim on appeal that the court failed to hold a hearing to resolve a critical factual jurisdictional dispute. See, e.g., *Johnson* v. *Preleski*, 335 Conn. 138, 152 n.15, 229 A.3d 97 (2020) (" 'our system is an adversarial one in which the burden ordinarily is on the parties to frame the issues, and the presumption is that issues not raised by the parties are deemed waived' "); *Bank of New York Mellon* v. *Francois*, 198 Conn. App. 885, 890–91, 234 A.3d 1089 (2020) (declining to address issues on appeal that were not briefed). Consequently, we decline to sua sponte raise and dispose of this appeal on this unpreserved and unraised ground. See, e.g., *State* v. *Stephenson*, 337 Conn. 643, 650–54, 255 A.3d 865 (2020) (Appellate Court abused its discretion by disposing of appeal on "distinct question" that was not raised by parties on appeal).

[12] The evidence that the plaintiff's counsel mailed the EMAP notice as part of its regular business practice constitutes circumstantial evidence, which alone supports the court's finding. Circumstantial evidence that a customary or ordinary procedure was followed is sufficient to support a finding that a letter was mailed. See, e.g., *Kerin* v. *Udolf*, 165 Conn. 264, 268, 334 A.2d 434 (1973) (mailing of installment check was established because defendant and his employee testified that they followed their customary procedure to stamp and then deposit check in mail); *Central National Bank* v. *Stoddard*, 83 Conn. 332, 76 A. 472 (1910) (mailing of bank notices was established because they were "in properly addressed and stamped envelopes" deposited "in the usual place in the bank for letters to be mailed, and that they were taken from that place by one whose duty it was to post them," and defendant "did not deny having received the notices"); *State* v. *Morelli*, 25 Conn. App. 605, 610–11, 595 A.2d 932 (1991) (mailing of breath tests was established because police officer who administered tests testified that it was department's " 'course of habit' " to mail tests results to subject of test).

[13] After a thorough review of the record, it is clear that the defendant waited until the final law day to challenge Pennymac's compliance with the EMAP notice requirement, which was more than three years after Pennymac had filed its affidavit of compliance with the EMAP. The defendant challenged the notice approximately ten months after the court rendered judgment of strict foreclosure and almost three months after the defendant's counsel retained Wade as an expert.